Paul TANNER, Plaintiff and Respondent,

v.

Esbern BAADSGAARD, Defendant and Appellant.

No. 16569.

Supreme Court of Utah.

May 27, 1980.

Jeril B. Wilson, Provo, for defendant and appellant.

M. Dayle Jeffs, Provo, for plaintiff and respondent.

CROCKETT, Chief Justice:

Plaintiff Paul Tanner brought this action against the defendant Esbern Baadsgaard, seeking specific performance of a real es-

tate contract providing for the sale of one and one-half lots of undeveloped property in Spanish Fork. From a judgment awarding that relief, the defendant appeals.

As is so often true in such controversies, there is sharp conflict in the evidence as to material and controlling facts. Notwithstanding the correctness of defendant's urgence that this Court may review the evidence because it is a case in equity,[1] it is our well-established rule that due to the prerogatives and advantaged position of the trial judge, we indulge considerable deference to his findings.[2] Where the evidence is in dispute, we assume that he believed that which is favorable to his findings, and we do not disturb them unless it clearly preponderates to the contrary.[3]

On March 19, 1977, the plaintiff and his brother and sister-in-law, Dwight and Velma Blood, went with the defendant and inspected the property. Later that day, the Bloods and the defendant signed an earnest money agreement of sale for $40,000, $500 down, for which Mr. Blood gave a check. Further payments were to be: $14,500 upon delivery of a deed to half of the whole lot on May 1, 1977, $12,500 on April 1, 1978, and $12,500 on April 1, 1979, the latter two payments to also include 8.5 percent interest from April 1, 1977.

The $14,500 payment, which was due on May 1, 1977, was not made. Mr. Blood testified that shortly thereafter, he contacted the defendant and informed him that he had not been able to obtain the necessary financing to make the payment, but told him that he would continue to attempt to do so. About two months later, near the end of June, 1977, the defendant contacted Mr. Blood and told him that he had lost the $500 check. Mr. Blood said they agreed that he should mail a check for $1,200, both

to replace the lost check and the rest to apply on the interest which had accrued to the defendant.[4] In the letter accompanying the check, Mr. Blood stated that he appreciated the defendant's patience and that if "circumstances change, necessitating that we move more quickly or arrange separate financing on the land before we get our construction loan, please advise." He received no response, nor any complaint about delay.

The plaintiff Tanner testified that he spoke with the defendant several times during the next six months about the fact that Mr. and Mrs. Blood had assigned their interest in the contract to him and he was still having difficulty in obtaining financing. The defendant still made no complaint about the delay. But he did tell plaintiff Tanner that it would be necessary to charge a higher interest rate. In response thereto, the parties agreed that interest was to be paid "in full for all of the time it took until we closed the transaction."

Just prior to December 25, 1977, the plaintiff, who could not then obtain the financing, told the defendant that there was an individual who was very interested in beginning construction on the lots and that financing for the project would be arranged in January or, at the latest, February. According to the plaintiff, the defendant again reminded him that "all of the interest would be due when the transaction was closed."

On February 21, 1978 the plaintiff contacted the defendant to inform him that financing had been obtained and to arrange for a time to close the transaction. The defendant then told plaintiff Tanner for the first time that he had arranged the sale of the property to another. Two days later, the plaintiff again approached the defend-

---

1. *Timpanogos Highlands, Inc. v. Harper*, Utah, 544 P.2d 481 (1975).

2. Id.; *Pagano v. Walker*, Utah, 539 P.2d 452 (1975); *McBride v. McBride*, Utah, 581 P.2d 997 (1978).

3. See *Kier v. Condrack*, 25 Utah 2d 139, 478 P.2d 327 (1970); *McBride v. McBride*, supra, note 2.

4. The defendant testified that, at the time, he told Mr. Blood: "I'll sell you the property at the same price you bought it for, providing you pay me interest by the month until you get your financing together."

ant, but was told that no money would be accepted for the purchase of the property.

Based on the foregoing, the trial court found that, by his conduct, the defendant had waived requirement of strict compliance with the dates of payment stated in the earnest money agreement, which waiver had been relied upon by the plaintiff. The court applied the rule that after such a waiver, the seller must give notice and a reasonable time to perform before he may insist upon holding the buyer strictly to the time requirements.[5] The trial court concluded that the plaintiff would be entitled to specific performance of the contract upon the payment of the stated purchase price, plus the interest as agreed upon.

The defendant contends that the trial court erred because the only reasonable finding from the evidence should be that the plaintiff had abandoned the contract before he attempted to complete the transaction in February, 1978; and that the plaintiff was not entitled to specific performance because he had not met the conditions nor made the payments as required under the contract.

As to that contention, these observations are pertinent: When parties have entered into a formal contract, such as for the purchase of real property, it is to be assumed that they will cooperate with each other in good faith for its performance,[6] and one refusing to so perform, or claiming a forfeiture thereof, has the burden of showing justification for doing so.[7] Proceeding on that premise, it is our opinion that there is a reasonable basis in the evidence for the trial court's refusal to believe that the plaintiff had abandoned the contract, and for finding that the defendant had waived strict compliance with the provisions as to time of payment.

The defendant also contends that the terms of the contract had become uncertain when the parties had agreed on an increase of the interest, but had not agreed upon a definite amount. We have no doubt as to the correctness of defendant's assertion that, in order to warrant specific performance, the essential terms of the contract must be sufficiently definite to enable the parties to understand what their obligations are.[8] But the proper application of that rule is as a shield to protect from injustice, and not as a weapon with which to work an injustice.[9] In regard to the defendant's claim of uncertainty: We think the trial court was also justified in finding that the agreement that interest would be paid for the time it took to complete the transaction did not result in any such uncertainty as to prevent specific performance. Whatever else may be said about uncertainty as to the payment of interest, we observe that this claim of error is also governed by the rule alluded to above: that the parties are duty bound to cooperate in good faith to carry out their original intent.

In the light of what has been said herein, we see no reason to disagree with the conclusion of the trial court that the plaintiff is entitled to specific performance of the contract upon payment of the purchase price and the accrued interest thereon.

Affirmed. Costs to plaintiff (respondent).

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

5. 17 C.J.S. Contracts § 506(b). See statements in *Fuhriman v. Bissegger*, 13 Utah 2d 379, 375 P.2d 27 (1962); *Hansen v. Christensen*, Utah, 545 P.2d 1152 (1976); *Harrison v. Puga*, 4 Wash.App. 52, 480 P.2d 247 (1971); *Angus Hunt Ranch, Inc. v. Reb, Inc.*, Wyo., 577 P.2d 645 (1978).

6. *Ferris v. Jennings*, Utah, 595 P.2d 857 (1979).

7. That the law does not generally favor forfeitures, see *Fullmer v. Blood*, Utah, 546 P.2d 606 (1976) and cases therein cited.

8. 81 C.J.S. Specific Performance § 36(b); *Pitcher v. Lauritzen*, 18 Utah 2d 368, 423 P.2d 491 (1967); *Eckard v. Smith*, Utah, 527 P.2d 660 (1974).

9. *Kier v. Condrack*, supra, note 3.