[No. 7271–4–I.   Division One.   June 2, 1980.]

SANDY POINT IMPROVEMENT COMPANY, *Respondent,* v.
LEONARD F. HUBER, ET AL, *Appellants.*

*Gary M. Rusing* and *Rusing & Platte,* for appellants.

*Larry Daugert* and *Brett, Daugert & Erickson,* for respondent.

JAMES, A.C.J.—Plaintiff Sandy Point Improvement Company was granted a permanent injunction enjoining defendants Leonard and Delores Huber from constructing a building on the Hubers' property. We affirm.

The Hubers purchased two adjoining lots within the Sandy Point Heights development in Whatcom County. On one of the lots they started construction of a storage building to store their boats, car, tractor, camper, 32–foot travel trailer, washer and dryer, rock–cutting equipment and canned goods. The Declaration of Restrictions, Easements and Reservations of Sandy Point Heights read in relevant part:

> Except for portions of the real property as may be used for recreational purposes or common service facilities by Sandy Point Improvement Company, a Washington corporation, no lot in the plat of Sandy Point Heights shall be used for any purpose other than for *residential purposes . . .*

(Italics ours.) The trial judge found that the storage building was not for residential purposes and enjoined further construction.

The Hubers first contend Sandy Point should be estopped from enforcing the covenant against them because

it had allowed construction of similar structures on other lots within the development. We do not agree.

If a covenant which applies to an entire tract has been habitually and substantially violated so as to create an impression that it has been abandoned, equity will not enforce the covenant. *Reading v. Keller,* 67 Wn.2d 86, 406 P.2d 634 (1965); *Mt. Baker Park Club, Inc. v. Colcock,* 45 Wn.2d 467, 275 P.2d 733 (1954). However, the applicability of estoppel is a question of fact. *Bersos v. Cape George Colony Club,* 4 Wn. App. 663, 484 P.2d 485 (1971).

The Hubers attempted to show four instances in which similar buildings had been constructed in Sandy Point Heights, which consisted of over 1,000 lots. However, an examination of the record discloses that one of the buildings in question was not actually on the development property; another was used as a service building for maintaining the golf course and was permitted. Two other buildings were built without permission of the Sandy Point development committee. However, during the pendency of this litigation, attempts were being made to require their removal.

The trial judge found that:

> There may be one or two buildings similar to that proposed by the Defendants in the 1000 lot development as a whole, but they are each smaller than the Defendants' proposed structure, and have never been authorized by the Plaintiff, with exception of the golf course storage building.

Finding of fact No. 8. Because that finding is supported by substantial evidence, it will not be disturbed on appeal. *Grayson v. Nordic Constr. Co.,* 92 Wn.2d 548, 599 P.2d 1271 (1979); *Beeson v. Atlantic–Richfield Co.,* 88 Wn.2d 499, 563 P.2d 822 (1977). That finding in turn supports the trial judge's conclusion that "[t]he Defendants have not proved the elements of estoppel." Conclusion of law No. 3.

The Hubers next contend the building did not violate the restrictive covenant because it was not intended to be used for any purposes other than residential. The trial judge found that "[t]he Defendants' building plan, given its size

and purpose, is not consistent with any reasonable interpretation of residential use." Finding of fact No. 7. We conclude the finding is supported by substantial evidence.

  It is well settled in this jurisdiction that words in a deed of conveyance or any instrument restricting the use of real property by the grantee are to be construed strictly against the grantor and those claiming the benefit of the restriction. Restrictive covenants upon the use of real property will not be extended beyond the clear meaning of the language used. *Weld v. Bjork,* 75 Wn.2d 410, 451 P.2d 675 (1969). In *Bersos v. Cape George Colony Club, supra* at 665, the court stated:

> [T]he intent of the parties to the covenant is the key factor in determination of the effect to be given restrictions.
>
> When meaning is doubtful, surrounding circumstances must be considered to determine proper meaning. Doubts must be resolved in favor of free use of land, but intended necessary implications from the writing may be enforced. *Burton v. Douglas County,* 65 Wn.2d 619, 399 P.2d 68 (1965). Intent is preeminently a question of fact.

However, unambiguous language in a covenant will be given its plain and reasonable meaning; the courts will not apply a rule of construction when it will defeat the obvious purpose of the restriction. *Rush v. Miller,* 21 Wn. App. 156, 584 P.2d 960 (1978).

  A private garage is a proper appurtenance necessary to the enjoyment of a dwelling house and does not violate a "for residence purposes only" covenant. *Mt. Baker Park Club v. Colcock, supra;* Annot., 175 A.L.R. 1191 (1948). However, if the garage is placed on an adjoining lot, it is no longer deemed to be appurtenant and does violate such a restriction even though used in connection with a residence on an adjoining lot. *Biltmore Dev. Co. v. Kohn,* 239 Ky. 460, 39 S.W.2d 687 (1931).

Affirmed.

RINGOLD and DURHAM–DIVELBISS, JJ., concur.