Clement **JOHNSON, Darrell Johnson and LaVon Johnson, Plaintiffs and Appellants,**

v.

**GARKANE POWER ASSOCIATION, Defendant and Respondent.**

No. 17251.

Supreme Court of Utah.

May 12, 1982.

Anthony M. Thurber, Salt Lake City, for plaintiffs and appellants.

D. Gary Christian, Salt Lake City, for defendant and respondent.

DURHAM, Justice:

This is an action to recover damages for the loss of the plaintiffs' farm crop and planting and soil preparation costs for 1977. The plaintiffs' claim is premised on the defendant's alleged contractual obligation to provide the plaintiffs with real "three-phase" electric power by 1977. The district court denied the plaintiffs' claim, holding that there was no contract, and awarded the defendant $8,883.53 on its counterclaim for power used. Plaintiffs appeal the dismissal of their action and the counterclaim award.

In 1974, plaintiffs had engineered an irrigation system to provide water for their farming operation near Tropic, Utah. The main pressurizing device for the system, a 100-horsepower pump, required "three-phase" electrical power for its most efficient and dependable operation. While real three-phase power was not available to plaintiffs' farm in 1974, the defendant did provide an interim substitute, "V-phase, open delta" connected power. "Open delta" connected power provides less stable electrical service and normally requires derating of equipment to less than full capacity. Equipment failures from blown fuses are

more common than with "real" three-phase power. Nonetheless, the "open delta" connected power provided adequate service through 1976.

The essence of the plaintiffs' contractual claim is that the defendant had agreed to replace the interim "open delta" connection with real three-phase power on, or before, a specific date after 1974. Since damages were claimed only for 1977, we may reason that plaintiffs were required to show, in order to carry their burden of proof, that the defendant had agreed to convert electrical service for plaintiffs' farm to real three-phase power by 1977. The trial court found that there was no such agreement. On appeal, plaintiffs make no claim that the law of contracts was incorrectly applied, but rather that the trial judge erred in the weight given to the evidence.

When the issue on appeal is one of fact, as it is here, our standard of review is well settled: "Our review in such cases goes only to the problem of whether the findings of the trial court are supported by substantial evidence. This Court will not upset the findings of a trial court unless the evidence clearly preponderates to the contrary." *Zions First National Bank v. First Security Bank of Utah*, Utah, 534 P.2d 900, 902 (1975); *see also Tanner v. Baadsgaard*, Utah, 612 P.2d 345 (1980); *Nuhn v. Broadbent*, 29 Utah 2d 198, 507 P.2d 371 (1973). We hold that there was substantial evidence to support the trial court's conclusion that no agreement to provide real three-phase power by 1977 existed. With respect to that issue, appellants contend that a document entitled "Agreement for Purchase of Power," dated July 1, 1974, and an undated memorandum written by Darwin Jackson, the defendant's engineer, comprise the sole and unrebutted evidence. The record shows otherwise.

As claimed by the plaintiffs, the July 1, 1974 "Agreement for Purchase of Power," which appears to be the defendant's standard form agreement to provide electrical service, provides under the caption "Service Characteristics" that three-phase power was to be provided. By its own terms, the

agreement was to be effective on July 1, 1974; however, the plaintiffs' own witnesses conceded that "real" three-phase power was neither promised nor expected in 1974, but testified rather that the initial service agreement with the defendant was for the substitute "open delta" connected power. Thus, the plaintiffs took an inconsistent position in asserting reliance on the literal language of a contract term while conceding that the same term did not express the parties' understanding when the agreement was executed. We doubt that this inconsistency was overlooked by the trial judge.

Three additional "Agreements to Purchase Power" were part of the record. Two were dated February 12, 1975, and the third was dated July 19, 1976. While the two 1975 agreements refer to service to be provided to specific pumps (pumps 2 and 3), the 1976 agreement contains no reference to a specific pump, as was the case with the 1974 agreement. All three of the subsequent agreements, however, provide for *two-phase* power under the "Service Characteristics" caption. Thus, the plaintiffs' written evidence of the defendant's promise to provide three-phase power in time for the 1977 growing season was ambiguous at best. While plaintiff Clement Johnson suggested in his testimony that he thought there might be other contracts, they were not produced at trial. Even without the defendant's rebuttal evidence and testimony, we find "substantial support" for the trial court's finding that "[t]here was no agreement by ... Garkane Power Association ... [to] construct a three phase power transmission line to plaintiffs' property or near it within any specific time frame."

The undated memorandum written by Darwin Jackson contains the following paragraph: "Mr. Johnson wanted to know what GARKANE's plans were to install three phase power into the area. It was explained that we were working on plans at the time and within a year the three phase power line would be constructed."

The plaintiffs aver that this extract from Mr. Jackson's memorandum, coupled with his testimony at trial, conclusively established that defendant had agreed to provide them with real three-phase power within a

year of mid-1974. The complete record of Mr. Jackson's testimony, however, suggests that he believed the memorandum to have been written closer to 1977—within a year of actual delivery of real three-phase power to the appellants in 1978 and consistent with the trial judge's holding that there was no contract to provide such power by 1977. Having found "substantial support" in the record for the trial judge's conclusion that there was no contract to provide real three-phase power by 1977, we find it unnecessary to consider whether the defendant's failure to provide such power was the cause of the plaintiffs crop loss.

We do, however, remand this case to the trial court on the matter of defendant's $8,833.53 counterclaim. While the record refers to the determination of the amount of the counterclaim by stipulation, we find no stipulation in the record.

Affirmed in part; remanded to consider the amount of defendant's counterclaim.

HALL, C. J., and STEWART, OAKS and HOWE, JJ., concur.