J. Howard ROWLEY and Nanette B. Rowley, his wife, Plaintiffs and Appellants,

v.

MARRCREST HOMEOWNERS' ASSOCIATION, John C. Woods, Clegg Construction Co., Inc.; and John Does I through XII, Defendants and Respondents.

No. 17560.

Supreme Court of Utah.

Oct. 25, 1982.

David R. Olsen, Craig W. Anderson, Salt Lake City, for plaintiffs and appellants.

Ronald R. Stanger, Provo, for defendants and respondents.

STEWART, Justice:

Plaintiffs, Howard and Nanette Rowley, brought this action for damages and an injunction to prevent Marrcrest Homeowners' Association (hereinafter Marrcrest) from blocking Rowleys' access to their driveway. The trial court found that Rowleys' site plan for construction of their home and driveway had been approved upon the condition that they not use a specific Marrcrest common area for access to their driveway. The court ruled that the Rowleys had not complied with that condition, had an adequate remedy at law, and therefore were not entitled to an injunction. On appeal, the Rowleys seek reversal of the trial court's judgment.

Marrcrest is a planned unit development in which the developer sold individual lots in a plat approved by the city, rather than building all the houses himself. All property owners become members of the Marrcrest Homeowners' Association, which regulates development by requiring compliance with a set of restrictive and protective covenants and conditions. These covenants include plan approval before building, payment of annual assessments, and exterior maintenance of all buildings and grounds.

Marrcrest has thirty-foot wide streets, which are too narrow for parking. The developer provided some offstreet parking in turnouts, most of which provide parallel parking space for two or three cars. Of ten such turnout parking areas, six also provide access to private driveways, and two have been landscaped to conform to the adjoining property. On the original plat, there is no designation that these turnout areas were reserved for parking. It is commonly understood, however, that they are not driving areas and are to be distinguished from the street.

The Rowleys purchased two adjacent lots in the development and proposed to build a duplex, which is not restricted by the Marrcrest covenants. At a time when plaintiff Howard Rowley was president of the Marrcrest Homeowners' Association, he presented a plan to the architectural control committee, made up of Marrcrest's Board of Directors, to construct one large home with its primary driveway from the home exiting to the north into a cul-de-sac. As part of the duplex plan, however, he proposed a second driveway which would exit to the west into a turnout parking area and then into the street. The parking area into which the Rowleys' proposed driveway would exit is larger and deeper than most in the development, allowing parking of eight or nine cars. The access to Rowleys' proposed driveway would take at least one of these parking spaces.

The Rowleys' plan was not promptly approved by the architectural committee because the additional "apartment" driveway would cross a parking area. The Rowleys claim that the committee members promised to approve their proposed driveway and building plan for the duplex if they narrowed the apartment driveway to take only one parking space and if they agreed to construct and maintain other parking spaces at their expense. In November 1977, by taking the plans to the homes or offices of the committee members, Howard Rowley secured a majority of the committee members' signatures on the building plan. At trial two committee members testified, and the trial court found, that the signatures were obtained on the condition that the Rowleys provide access to the apartment by extending the original driveway from the north. The Rowleys contended that this solution was not discussed and, if implemented, would result in no front lawn for the apartment.

The Rowleys began construction of their home, and when it appeared they were planning to use the parking area for access to the apartment driveway, other homeowners filed complaints with Marrcrest's Board of Directors. On May 29, 1979, when Howard Rowley was still on the board but no longer Marrcrest's president, the issue of the Rowleys' driveway was discussed in a board meeting. The new board decided "not to overturn the approval given by the prior board," and left the situation unchanged. In the June 5, 1979 meeting, the board decided to obtain legal advice on the Rowleys' driveway. A letter from Marrcrest's attorney was read at the June 12, 1979 board meeting and suggested that Marrcrest stand by the decision of the prior board and take no further action. The letter was entered into the meeting's minutes, and the board elected to accept the attorney's recommendations. As a board member, Howard Rowley received copies of all board meeting minutes and was informed of the board's actions.

The Rowleys constructed their apartment driveway and carport in June, 1979. Several of the homeowners formally objected to the board, and a special meeting of all Marrcrest's members was called. On August 15, 1979, at this special meeting, the

property owners voted to require the Rowleys to abide by the restrictive covenants and the conditional plat approval that required them to provide access to the apartment from the north driveway. By this time the concrete for the Rowleys' driveway and carport had been poured, and they took no action to change the situation. On February 20, 1980, Marrcrest authorized construction of a berm and planter box across the entrance to the apartment's driveway while the Rowleys were out of town.

The trial court made findings of fact that the Rowleys' plan was approved only on the condition that they extend the north driveway for use by the apartment; that the Rowleys understood this condition; and that there was no written authorization for the Rowleys' use of the "common area" for their driveway. These findings are supported by the evidence, and therefore cannot be disturbed. *Tanner v. Baadsgaard,* Utah, 612 P.2d 345 (1980); *McBride v. McBride,* Utah, 581 P.2d 996 (1978).

The first issue on appeal is whether the Rowleys could be restricted from using the parking area to gain access to the apartment driveway. The Rowleys allege that the parking area was designated as part of the development's roads and not as common area. By this distinction, the Rowleys attempt to persuade the Court that all residents in Marrcrest have access to their homes from the roadways, and to restrict the Rowleys from similar access would be unfair and discriminatory.

The plats offered by the Rowleys fail to justify this distinction. The Marrcrest streets are designated as "Home Owner's Association Roadway," and all other property not depicted as building lots are entitled "Home Owner's Association Property." The plat legend contains a section called "Owners' Dedication," which states in part that the property owners "hereby dedicate the streets, walkways, and other Association properties to Marrcrest Home Owner's Association." Marrcrest's Declaration of Restrictive Covenants and Conditions defines common area as "all real property

owned by the Association for the common use and enjoyment of the members of the Association." Another section in the Declaration divides all the property within the Marrcrest development into only two classifications, dwelling units and common areas. The parking area, along with all other common areas, belongs to Marrcrest, which is responsible for protecting the common ownership for the benefit of all Marrcrest members.

The Rowleys also contend that the plats are writings and that parol evidence relating to the purpose of the "parking areas" was inadmissible. Plats are writings and parol evidence is inadmissible to explain or modify an unambiguous plat. *Milliken v. Smith,* 120 Okl. 211, 251 P. 84 (1926); *Swanson v. Gillan,* 54 R.I. 382, 173 A. 122 (1934). As in all parol evidence cases, oral testimony may not be admitted to vary or contradict the terms of a document; however, it is admissible to clarify the meaning of ambiguous provisions. The turnout areas shown on the plats do not clearly or obviously portray their purpose. It was therefore proper to admit evidence to clarify the intended purposes and uses of these particular areas. The testimony did not contradict or change anything depicted on the plat and was therefore not in violation of the parol evidence rule.

The next issue raised is whether Marrcrest waived its right to enforce the restrictive covenants and is therefore estopped from excluding the Rowleys' use of the parking area. First, the Rowleys deny the existence of a restrictive covenant that prevents them from having access to the street across the parking area. The Declaration of Restrictive and Protective Covenants contains few references to the ownership or regulation of the common areas. Nevertheless, the common area is owned by Marrcrest for the benefit of all the members. One means of protecting the members' ownership interest in the common areas was the creation of a board of directors to perform several functions, one of which is to supervise the architectural committee. Before any structure can be constructed

within the development, the architectural committee must approve the plans in writing. The common areas may be protected from private acquisition, impairment, or devaluation through the regulation of the architectural committee. The Rowleys, therefore, are correct in asserting that no specific restrictive covenant prohibits access to the street across the parking area. Nevertheless, Marrcrest has the legal right to control access through parking areas by granting or denying proposed site plans.

Rowleys further contend that the 1977 approval of their plans and the other similar uses of the parking areas in the development constituted a waiver and estopped Marrcrest from denying them access across the parking area.

"A waiver is the intentional relinquishment of a known right. To constitute a waiver, there must be an existing right, benefit, or advantage; a knowledge of its existence' and an intention to relinquish it. It must be distinctly made, although it may be express or implied." *Phoenix Insurance Co. v. Heath,* 90 Utah 187, 194, 61 P.2d 308, 311–12 (1936). *See also Bjork v. April Industries, Inc.,* Utah, 547 P.2d 219 (1976); *American Savings & Loan Association v. Blomquist,* 21 Utah 2d 289, 445 P.2d 1 (1968). Estoppel has been defined as:

> a doctrine of equity purposed to rescue from loss a party who has, without fault, been deluded into a course of action by the wrong or neglect of another. The measure we apply to plaintiffs' claim of estoppel is an adaptation to this case of the standard heretofore approved by this court: Estoppel arises when a party . . . by his acts, representations, or admissions, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another . . . to believe certain facts to exist and that such other . . . acting with reasonable prudence and diligence, relies and acts thereon so that he will suffer an injustice if the former . . . is permitted to deny the existence of such facts.

*Morgan v. Board of State Lands,* Utah, 549 P.2d 695, 697 (1976).

■ We hold that Marrcrest did not waive its power to restrict the Rowleys' use of the parking area. The directors who signed Rowleys' plat in 1977 gave their approval on the condition that the parking area not be used as part of the Rowleys' driveway. The Rowleys were informed at the May 29, 1979 board meeting that there was no change in the approval given in 1977. Nevertheless, the Rowleys proceeded with construction in June, and were informed on August 15, 1979 that they could not utilize their driveway in that manner. Under these circumstances, Marrcrest did nothing to relinquish its right to regulate the site plan design.

■ The instant facts also preclude the Rowleys' reliance on estoppel. The conditional approval of the site plan and the representations that the requested changes had been made show that the Rowleys were not without fault in proceeding with the construction. Neither the May 29, June 5, nor June 12 board meetings did anything to modify the previous conditional approval, but rather reaffirmed it. Marrcrest did not intentionally or negligently induce the Rowleys to proceed with their construction. The attorney's letter of June 11, 1979 recommended no further action against the Rowleys, and advised that relying on the previous board's decision was "the safest route for [the Board] to take." This certainly did not induce the Rowleys to proceed in the belief that the board of directors approved their proposed plans.

■ The Rowleys' claim that other homeowners in the development utilize parking areas for access to their driveways. That does not preclude Marrcrest from denying the Rowleys the same privilege. Although it is correct that Marrcrest has approved use of parking areas for access to driveways in some instances, it is not true that Marrcrest was required to do so. Marrcrest clearly has the right to require that all plans for construction be submitted and approved to prevent driveways from being built which require access across the parking areas, and such determinations will necessarily be made on a case by case basis. Although the

Rowleys correctly argue that restrictive covenants which are habitually violated and apparently abandoned are not enforceable, *Sandy Point Improvement Co. v. Huber,* 26 Wash.App. 317, 613 P.2d 160 (1980), waiver and estoppel do not apply in this case because Marrcrest has consistently required all construction to be approved before it was commenced.

Finally, it is argued that Marrcrest cannot construct planter boxes for the sole purpose of injury to a homeowner. The Rowleys claim that the planter boxes were constructed to block the driveway and render the driveway and carport useless. As a general proposition, one who erects an otherwise useless structure for the sole purpose of injuring a neighbor makes an improper use of his property. *Sundowner, Inc. v. King,* 95 Idaho 367, 509 P.2d 785 (1973); *Burke v. Smith,* 69 Mich. 380, 37 N.W. 838 (1888). However, the planter boxes are on Marrcrest property and block an illegal use of the common area by the Rowleys. The general rule, stated above, does not apply in this case.

There is substantial evidence to support the conclusion that the Rowleys knew of the condition imposed upon the approval of their proposed plans, but nonetheless constructed their carport and driveway in violation of that condition. Marrcrest is under no obligation to grant access to the Rowleys' additional apartment driveway. Marrcrest may use the common area for any appropriate use, including installing planter boxes to beautify the parking facility. The Rowleys may not force Marrcrest to cooperate in implementing their unapproved plan.

Affirmed. Costs to respondents.

HALL, C.J., and OAKS and DURHAM, JJ., concur.

HOWE, Justice (concurring and dissenting):

I concur in the majority opinion except in that part dealing with waiver by the Association of its right to enforce the restrictive covenants. I would remand the case to the trial court for more definite findings of fact on that issue.

In paragraph 12 of his complaint, the plaintiffs alleged that the Association had waived any rights which it may have had to prevent the plaintiffs from gaining access to their property across the common area because the Association had repeatedly allowed similar continuing violations by other individuals in Marrcrest. In support of that allegation, Mr. Rowley testified that in eight of the ten other parking areas there were driveway entrances. He testified that he had long been a member of the homeowners' association, had served three times on the board of trustees, had served as president and secretary and had attended many homeowners' meetings, but he had never heard that any resident had been told that he was not to obtain access to his property through the common area. The inference of his testimony was that the Association had never given permission for any owner to so use the common area. Clinton Harding, president of the Association in 1979, testified that the plaintiffs had been "treated differently" than had other individuals in like circumstances in the installation of driveways. On the other hand, the Association adduced testimony that it had given express approval in the eight other cases although in some of them permission was given only for temporary use.

The trial court made no specific finding of fact whether the other uses of the common area for entrance to driveways was with or without the consent of the Association. Neither was the subject mentioned in his memorandum decision. The majority opinion states that "waiver and estoppel do not apply in this case because the Association has consistently required all construction to be approved before it was commenced." I fail to find anything in the Findings of Fact to that effect.

As stated in the majority opinion, restrictive covenants which are habitually violated and apparently abandoned will not be enforced by a court of equity. I believe that the plaintiff properly raised that issue in this case and that the Findings of Fact

made by the trial court do not specifically address that issue. A Conclusion of Law states that the "plaintiffs did not sustain their burden to prove the allegation set forth in their complaint." That statement is so general and conclusory that it is not helpful here. I would remand this case to the trial court for a specific finding as to whether the use of the common area by others as an entrance to driveways was with or without the prior consent of the Association and to amend the judgment accordingly if necessary.

It should be further noted that assuming the other uses were with the consent of the Association, the Association could not arbitrarily and capriciously deny the same privilege to the plaintiffs. This claim, however, was not pleaded by the plaintiffs and is not properly before us for decision.