[No. 5537–1.   Division One.   December 11, 1978.]

ROY S. LEIGHTON, ET AL, *Appellants*, v. CHARLES T.
LEONARD, ET AL, *Respondents*.

*Helsell, Fetterman, Martin, Todd & Hokanson* and *Russell V. Hokanson,* for appellants.

*Jackson, Ulvestad, Goodwin & Grutz, Daniel G. Goodwin, Anderson, Hunter, Dewell, Baker & Collins, P.S.,* and *Thomas R. Collins,* for respondents.

RINGOLD, J.—This declaratory judgment action was brought by Roy S. and Gladys M. Leighton against Charles T. and Brenda A. Leonard to determine the effect of a height restriction in a real property agreement.

At the close of the plaintiffs' case the trial court weighed the evidence and entered findings of fact, conclusions of law and a judgment sustaining the restriction as a covenant limiting the height of any house to be built on lot 2 of Bay View Circle owned by the Leightons. The plaintiffs appeal, assigning error to several findings of fact and conclusions of law made by the trial court, and to the entry of the judgment dismissing plaintiffs' complaint.

On June 19, 1966, Dwight Pack conveyed by warranty deed lot 3 in Bay View Circle to James Hanson. Pack, a builder, also then owned adjacent lot 2. Pack and Hanson entered into an agreement which contained a restriction limiting the type of house Pack then anticipated building, but never built on lot 2, as follows:

> The highest point of the roof of the house to be built on Lot 2, Bayview Circle Addition shall not be higher than 13 feet above the level of the concrete backyard patio of the adjoining property commonly known as 2135 N.W. 97th or shall not exceed the main floor living room windowsill level of this house to be built on Lot 3, Bayview Circle Addition with windows detailed to measure 5 feet in height.

Plaintiff's Exhibit 3. This agreement, along with Hanson's affidavit attesting to it, was recorded in February 1967.

In 1969 the Leightons purchased lot 2 from Pack, but Pack did not expressly inform the Leightons of the existence of the height limitation. When the Leightons attempted to sell lot 2 in 1976 they became aware of the height limitation arising from the Pack–Hanson agreement. The Leightons then brought this action seeking to have the trial court find that the limitation was not a covenant running with the land. Alternatively they urged that if it is such a restriction it only affects that portion of the lot upon which Pack anticipated building a house in 1966, the only site upon which the structure would impede the Leonards' view.

Parol evidence was introduced to resolve the intent of the parties to the original agreement as to whether the covenant should run with the land and the meaning of the term "the house" in the agreement. The trial court concluded that the covenant was intended to run with the land and that it limits the height of any house built on lot 2. We agree.

The errors assigned raise four issues:

1. Is the height restriction a covenant running with the land enforceable against the Leightons?

2. Did the trial court misconstrue the scope of the covenant?

3. Should the trial court have interpreted the covenant in such a way as to minimize the burden to lot 2?

4. Did the trial court err in admitting prejudicial testimony?

### COVENANT RUNNING WITH THE LAND

A consistent explication of the Washington law regarding covenants running with the land is extremely difficult. No Washington case authoritative on the subject of when covenants run with the land has been cited by the parties or discovered in research. Without undertaking a comprehensive review of the case law, it should be noted that the cases dealing with the problem have often relied upon as determinative only one of the elements of a proper analysis. In

*Rodruck v. Sand Point Maintenance Comm'n,* 48 Wn.2d 565, 295 P.2d 714 (1956), for example, the analysis turns solely upon the "touch and concern the land" element. *Johnson v. Mt. Baker Park Presbyterian Church,* 113 Wash. 458, 194 P. 536 (1920) was decided on the basis of equitable estoppel, rather than on the basis of equitable restrictions running with the land. A recent article by Professor William Stoebuck, *Running Covenants: An Analytical Primer,* 52 Wash. L. Rev. 861 (1977) highlights many of the analytical difficulties and provides us with assistance.

The prerequisites for a covenant to "run with the land" are these: (1) the covenants must have been enforceable between the original parties, such enforceability being a question of contract law except insofar as the covenant must satisfy the statute of frauds; (2) the covenant must "touch and concern" both the land to be benefitted and the land to be burdened; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate, *i.e.,* privity between the original parties to the covenant and the present disputants;[1] and (5) there must be horizontal privity of estate, or privity between the original parties.[2] W. Stoebuck, *supra.*

All the elements of the above analysis are satisfied here. The original covenant is in writing signed by both parties, Pack and Hanson. For the benefit side the test for whether a covenant "touches and concerns the land" is whether it enhances the land's value, and for the burden side, whether it diminishes the land's value. *Rodruck v. Sand Point Maintenance Comm'n, supra* at 575; W. Stoebuck, *supra* at

---

[1]The Restatement of Property favors a different test for the running of the benefit from that for the running of the burden. For the burden to run the successor in interest must hold an estate of equal duration to that held by the promissor at the time the promise was made. For the benefit to run, it is sufficient that an interest of the promisee pass to the successor. Restatement of Property § 547, comment *a* (1944).

[2]The Restatement of Property takes the position that privity of estate between the promissor and promisee is unnecessary for the benefit to run. Restatement of Property § 548 (1944).

874. By this criterion it is clear that the covenant "touches and concerns" both the burdened estate and the benefitted estate. There is testimony in the record by Pack that the parties intended to bind their successors in interest. Pack sold to the Leightons the fee interest in the parcel to be burdened, so the vertical privity requirement is satisfied on the burden side. Pack sold to Hanson and Hanson to Leonard the fee interest in the estate to be benefitted, so this requirement is satisfied as to the benefit side. Pack conveying to Hanson a fee estate satisfies the horizontal privity requirement. The trial court correctly decided that the covenant runs with the land, both on the burden side and on the benefit side.

## NOTICE

The Leightons argue that the restriction was simply a personal agreement limited to Pack's own plan and that it was not intended to be recorded. Hanson, after lot 3 had been conveyed to him, signed an affidavit incorporating that part of the additional agreement which dealt with the height restriction on lot 2. He then recorded the document with the county auditor. The Leightons contend this recording was contrary to RCW 65.08.070, which requires instruments to be acknowledged in order to be recorded.

*Strong v. Clark,* 56 Wn.2d 230, 352 P.2d 183 (1960) holds that a properly recorded instrument gives notice of its contents to all the world. RCW 65.08.030 provides:

An instrument in writing purporting to convey or encumber real estate or any interest therein, which has been recorded in the auditor's office of the county in which the real estate is situated, although the instrument may not have been executed and acknowledged in accordance with the law in force at the time of its execution, shall impart the same notice to third persons, from the date of recording, as if the instrument had been executed, acknowledged, and recorded, in accordance with the laws regulating the execution, acknowledgment, and recording of the instrument then in force.

Although the instrument was not acknowledged, under the foregoing curative statute the recorded document served as notice to the Leightons. Note, 59 A.L.R.2d 1319, 1320 (1958).

### SCOPE OF THE COVENANT

· The Leightons contend that the covenant is ambiguous and that the court should have relied more on parol evidence to determine its meaning. They argue that the covenant contemplated the construction of a particular house on lot 2 which would have obstructed Hanson's view. Therefore, the Leightons claim that the purpose of the covenant was to protect only the view of Puget Sound for the Hanson–Leonard house and that the height restriction should be limited to a house constructed on that portion of the lot.

The only respect in which the trial court considered the covenant to be ambiguous was whether the language referring to "the house" meant the house Pack contemplated building, or *any* house to be constructed. At the time the document was signed by Pack and Hanson, Pack had no plans or precise site location prepared.

■ *Burton v. Douglas County,* 65 Wn.2d 619, 621–22, 399 P.2d 68 (1965), provides the guidelines by which the covenant will be interpreted.

(1) The primary objective is to determine the intent of the parties to the agreement, and, in determining intent, clear and unambiguous language will be given its manifest meaning. (2) Restrictions, being in derogation of the common–law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed. Doubts must be resolved in favor of the free use of land. (3) The instrument must be considered in its entirety, and surrounding circumstances are to be taken into consideration ·when the meaning is doubtful.

(Citations omitted.)

Because Pack had not determined the precise siting of the house he planned to build on lot 2, and because the

plans for the house were otherwise in the formulative stages, the trial court found that the restriction could not be read to apply only to that area of the lot upon which a structure would impede the view. The court took into account the surrounding circumstance that local zoning permits only one house per lot to corroborate its view that "the house" means *any* house.

The policy favoring the free use of land has, as Stoebuck points out, undergone substantial erosion. As public restrictions, in the form of zoning, have gained favor, so have private restrictions. W. Stoebuck, *supra* at 919–20. The trial court gave due weight to the policy.

The Leightons would have the court read into the document a term of the covenant which may have been subjectively contemplated by Hanson and Pack. *Burton v. Douglas County, supra,* does place importance on the intent of the parties in construing a restriction on the use of land. When covenants run with the land, however, the covenants create rights and impose duties and obligations upon parties who were strangers to the original document. An objective reading of the covenant must also be considered where as here two parties who were not signatories to the instrument are now bound by its terms. Reading the covenant objectively, we cannot construe it as prohibiting the building of a house only at one site on lot 2.

██ Weighing the policy favoring free use of land, the intention of the parties, and considering the agreement in its entirety and the surrounding circumstances, we cannot say the trial judge erred in his interpretation of the covenant. After considering all of the parol evidence, the trial court found that the term "the house" referred to *any* house. There is substantial evidence carefully considered by the trial court to support its findings.

> If we were of the opinion that the trial court should have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court.

*Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

ADMISSION OF EVIDENCE

Plaintiffs claim that the trial court erred in admitting evidence relating to the price paid for the property by the Leightons, the price offered by the prospective purchasers, Leightons' intent to sue Pack, and a title insurance company settlement. The record indicates, however, that objection to the evidence was sustained and what was heard by the court was an offer of proof. There is nothing in the trial court's oral decision, findings of fact, or conclusions which would indicate that it accepted this testimony as admissible evidence.

Affirmed.

ANDERSEN, A.C.J., and JAMES, J., concur.

Reconsideration denied February 28, 1979.