[No. 15247-9-II.   Division Two.   December 21, 1993.]

MOUNTAIN PARK HOMEOWNERS ASSOCIATION, INC., *Appellant,*
v. PADDY L. TYDINGS, ET AL, *Respondents.*

---

140

*Brian L. McCoy* and *Brian L. McCoy & Associates,* for appellant.

*Robert K. Ricketts,* for respondents.

MORGAN, J. — The Mountain Park Homeowners Association (Association) appeals a summary judgment granted to Richard and Paddy Tydings. We reverse and remand.

The Mountain Park subdivision is a 244-unit planned community. It is governed by a declaration of covenants, conditions and restrictions (CC&R's) that includes a covenant against antennas. That covenant provides:

> *Section 17. Utility lines; Radio and Television Antennas.* All electrical service, telephone lines and other outdoor utility lines shall be placed underground. No exposed or exterior radio or television transmission or receiving antennas shall be erected, placed, or maintained on any part of such premises except as approved by the ACC [Architectural Control Committee[1]] prior to installation or construction.

CC&R's, article 9 § 17; Brief of Appellant app. A-16.[2]

The Association is a nonprofit corporation whose members are homeowners in the planned community. Its board of directors is responsible for enforcing the CC&R's.

Tydings are members of the Association because they own a home in Mountain Park. During the summer of 1988, they erected a satellite dish in their backyard. When another resident complained to the Association, it sent a letter asking Tydings to remove the dish. Tydings did not do so.

On October 17, 1988, the Association filed suit against Tydings to compel compliance with the covenant against antennas. At about the same time, it also filed suit against a

---

[1]Other parts of the CC&R's elaborate on the duties of the ACC. Article 8, section 2 provides that the ACC is responsible for approving construction or modification of buildings and other structures. Article 7, section 3 provides that the ACC may approve plans only if the proposals meet specified criteria and comply with the CC&R's.

[2]Remarkably, neither party has included a copy of the CC&R's in the record. However, a copy is appended to the appellant's brief, and the respondent does not dispute its accuracy.

homeowner named Winslow, who also had erected a satellite dish. It appears that the Winslow suit, like the one against Tydings, was designed to compel compliance with the covenant against antennas. It further appears that Winslow defended on grounds that other homeowners in the community were violating various covenants contained in the CC&R's, and that he was being unfairly singled out for enforcement. In February 1989, a trial judge different from the one here ruled that there was no genuine issue of fact for trial and granted summary judgment in favor of the Association.

On November 23, 1988, the Association moved for summary judgment in this case. In responsive affidavits, Tydings admitted they had erected a satellite dish.[3] They claimed, however, that "numerous other violations" of the CC&R's were being committed by various homeowners, and that the Association was "singling out our satellite dishes unfairly".

Apparently in response, the Association investigated other CC&R's violations occurring in the subdivision. A letter was sent to each perceived violator, asking that he or she comply with the CC&R's.

On February 17, 1989, the trial court denied the Association's motion for summary judgment. The court stated in its written order:

[I]f all covenants and/or restrictions contained in the Mountain Park Declaration of Covenants, Conditions and Restriction[s] are not uniformly enforced this action [will be] found to be discriminatory [and] will be dismissed.

Appellant's Clerk's Papers, at 85.

In March 1989, the Association believed that 7 to 12 homeowners remained in violation of the CC&R's.[4] It sent a letter

---

[3] In their brief on appeal, Tydings seem to suggest that their satellite dish is not an antenna within the meaning of the covenant discussed in this opinion. Brief of Respondent, at 7. If that argument is being made, we reject it.

[4] The violations included stored disabled vehicles, campers, boats, and building materials, as well as an unapproved, traditional TV antenna.

to each of these homeowners stating it would join him or her in the Tydings' litigation if he or she did not comply with the CC&R's within 60 days. Apparently, it also contemplated that the ACC would conduct a survey to identify additional violations. However, nothing further was done at that time.

In May 1989, the Association moved to reconsider the denial of summary judgment. The court denied the motion on June 21, commenting that "there is an issue of fact as to the uniformity of enforcement of the restrictive covenants at issue."

Almost 2 years elapsed. Then, on March 8, 1991, Tydings moved to dismiss. They based their motion on the trial court's February 1989 declaration that "if all Covenants and/or Restrictions . . . are not uniformly enforced this action [will be] found to be discriminatory [and] will be dismissed"; and, further, on several affidavits asserting that the Association had failed to enforce the CC&R's during the preceding 2 years. Responding, the Association estimated there were "approximately the same number of CC&R's violations within the subdivision that there were a couple of years ago." It said this was a 4 percent noncompliance rate, which is "very good and constitutes reasonably uniform enforcement." It said it was planning a curbside inspection of each home in the subdivision, and that it had, that month, sent every homeowner in the subdivision a letter and a summary of the CC&R's.

On May 15, 1991, the court signed an order stating:

> ORDERED, ADJUDGED and DECREED that, there remaining a genuine issue of material fact as to the extent of uniform enforcement of those certain covenants, conditions and restrictions of Mountain Park Residential Subdivision, Defendants['] Motion to Dismiss Plaintiff's Complaint shall be and the same hereby is DENIED without prejudice . . ..

Tydings moved for reconsideration, and the motion apparently was granted. Then, on June 28, 1991, the trial court entered judgment dismissing the Association's complaint with prejudice. The court held, necessarily as a matter of

law, that from February 17, 1989, to May 24, 1991, the Association

has not uniformly enforced or attempted uniform enforcement of the CC&R's of the Mountain Park Development and has failed to take any action against the numerous violations of the CC&R's except for the proceedings against defendant herein, thus [its allegations against Tydings] are discriminatory.

The court further ruled:

The prohibition against satellite dishes and TV and radio antennas in the Codes, Covenants, and Restriction[s] is an unreasonable restraint against Defendant's right to use his property and to receive TV and satellite transmissions. That this use does not impair or injure the rights of other property owners.

The court also awarded $3,140.62 in attorney's fees to Tydings, apparently on the basis of article 14, section 2 of the CC&R's. On August 23, the trial court entered an order denying the Association's motion for reconsideration.

The Association now appeals the June 28, 1991, order of dismissal with prejudice, as well as the court's subsequent order denying reconsideration. We must take the facts in the light most favorable to the nonmoving party, *Scott v. Pacific West Mt. Resort*, 119 Wn.2d 484, 487, 834 P.2d 6 (1992); *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); *Glesener v. Balholm*, 50 Wn. App. 1, 7, 747 P.2d 475 (1987), and we can sustain the summary judgment of dismissal only if there is no genuine issue of material fact. CR 56(c). *Atherton Condominium Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

I

Preliminarily, we consider whether the covenant against antennas constitutes a covenant running with the land. If the answer is no, Tydings are entitled to prevail, and we need not reach the parties' remaining contentions.

The prerequisites for a covenant running with the land are as follows:

(1) [T]he covenants must have been enforceable between the original parties . . .; (2) the covenant must "touch and concern" both the land to be benefitted and the land to be burdened; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate, *i.e.*, privity between the original parties to the covenant and the present disputants; and (5) there must be horizontal privity of estate, or privity between the original parties.

(Footnote omitted.) *Leighton v. Leonard*, 22 Wn. App. 136, 139, 589 P.2d 279 (1978).

■ Tydings argue the covenant against antennas fails to satisfy the first criterion, because the CC&R's are not enforceable against the developer, and the developer was an original party. Tydings rely on article 8, section 1(b), which provides:

Notwithstanding any provision of this Declaration, no action taken by Developer to develop the properties in accordance with the Development Plan shall require the approval of the ACC.

The argument is not well taken. Article 14, section 1 provides:

All present and future owners or occupants of dwelling units shall be subject to and shall comply with the provisions of this Declaration, and the By-Laws and rules and regulations of the Association, as they may be amended from time to time.

Article 1, section 6 defines "owner" as "every person or entity, including Developer, which is a record owner of the fee simple title to any dwelling unit . . .." Thus, when the developer is acting in the capacity of an owner, it is bound by the CC&R's to the same extent as every other owner.

Tydings also argue that the covenant against antennas fails to satisfy the second criterion of *Leighton*. Essentially, they say the covenant does not benefit any piece of land within the subdivision.

■Again, the argument is not well taken. *Leighton*'s second criterion requires evidence that a burden "touches and concerns" the land. A covenant touches and concerns the land when, by restricting the use of one parcel, it enhances the value of another. *Leighton*, 22 Wn. App. at 139; *see Seattle v.*

*Fender*, 42 Wn.2d 213, 254 P.2d 470 (1953); *Bremmeyer Excavating, Inc. v. McKenna*, 44 Wn. App. 267, 269, 721 P.2d 567 (1986). Here, the covenant against antennas restricts use of all lots in order to improve the appearance of each lot. This operates for the benefit of each lot, and we conclude that *Leighton*'s second criterion is met.

*Leighton*'s remaining criteria have not been put in issue. Thus, the covenant against antennas constitutes a covenant running with the land.

## II

■ We next consider whether the covenant against antennas constitutes an unreasonable restraint on the use of property. Covenants should be interpreted so they protect the homeowners' collective interest. *Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 181, 810 P.2d 27, *review denied*, 117 Wn.2d 1013 (1991). They need be reasonable and reasonably exercised to be valid. *Thayer v. Thompson*, 36 Wn. App. 794, 797, 677 P.2d 787 (citing 7 G. Thompson, *Real Property* § 3166 (Supp. 1981)), *review denied*, 101 Wn.2d 1016 (1984). They have been upheld where the intent is to "maintain a uniformity of appearance in the subdivision, to prevent the blockage of views and to control unwanted uses", *Krein v. Smith*, 60 Wn. App. 809, 812, 807 P.2d 906, *review denied*, 117 Wn.2d 1002 (1991), or to "protect the aesthetic harmony of the community". *Witrak*, 61 Wn. App. at 181; *see Shoreline Estate Homeowners Ass'n v. Loucks*, 84 Or. App. 302, 733 P.2d 942 (1987) (restrictive covenant limiting erection of "structures" applied to satellite dishes, which had to be removed). Specifically, covenants have been upheld where they prohibit trailers, *Parry v. Hewitt*, 68 Wn. App. 664, 847 P.2d 483 (1992), regulate fence height, *Witrak,* restrict the parking of campers, *Krein,* ban storage buildings, *Sandy Point Imp. Co. v. Huber,* 26 Wn. App. 317, 319, 613 P.2d 160 (1980) and limit the height of buildings, *Leighton.*

■ Here, the covenant against antennas was intended to "protect the aesthetic harmony of the community" and "main-

tain a uniformity of appearance" within the subdivision. Indeed, the CC&R's expressly state that they are intended to "preserve and enhance the property values, amenities, and opportunities", and that they are "for the benefit of the property and each owner".[5] Given these purposes, the covenant against antennas was not an unreasonable restraint on the use of property.[6]

### III

Lastly, we consider whether the trial court erred when it concluded, as a matter of law, that the covenant against antennas was not being uniformly enforced by the Association. When a covenant has been abandoned, it will not be enforced.[7] *Mt. Baker Park Club, Inc. v. Colcock*, 45 Wn.2d 467, 471, 275 P.2d 733 (1954) (citing *Ronberg v. Smith*, 132 Wash. 345, 232 P. 283 (1925)); *see also Tindolph v. Schoenfeld Bros., Inc.*, 157 Wash. 605, 610, 289 P. 530 (1930); *White v. Wilhelm*, 34 Wn. App. 763, 770, 665 P.2d 407 (citing 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 331 (1965)), *review denied*, 100 Wn.2d 1025 (1983). A covenant is abandoned when it is habitually and substantially violated, and nothing is done in response. *Colcock*, 45 Wn.2d at 471 (citing *Ronberg*); *see also Tindolph*, 157 Wash. at 610; *Wilhelm*, 34 Wn. App. at 770 (citing 20 Am. Jur. 2d § 331). A covenant is not abandoned when it has been violated only a few times. *Wilhelm*, 34 Wn. App. at 769-70 (quoting Washington State Bar Ass'n, *Real Property Deskbook* § 15.21 (1979)); *Huber*, 26 Wn. App. at 319; *see Witrak*.

---

[5]CC&R's, Background section (4).

[6]Further, the Tydings present no case law to support their contention that restriction of a satellite dish is an unreasonable restraint of the use of their land. Assignments of error need not be considered when not supported by authority. *Smith v. King*, 106 Wn.2d 443, 452, 722 P.2d 796 (1986); *Puget Sound Plywood, Inc. v. Mester*, 86 Wn.2d 135, 142, 542 P.2d 756 (1975).

[7]Neither side cites any cases on selective enforcement. Each seems to assume that cases on abandonment control the present contention. Thus, we assume likewise.

■ Before we can apply these rules to this case, we must understand what violations are relevant to the present dispute. Article 14, section 4 of the CC&R's provides:

> *Severability.* Invalidation of any one of these covenants or restrictions by judgment or court order shall not affect any other provisions which shall remain in full force and effect.

Moreover, at oral argument in this court, Tydings asked this court to treat the covenant against antennas separately from the other CC&R's; specifically, Tydings asked this court not to disturb any of the CC&R's except the covenant against antennas. Finally, in *Hagemann v. Worth,* 56 Wn. App. 85, 89, 782 P.2d 1072 (1989), Division Three held that enforcement of one covenant was not affected by the violation of other covenants in the same agreement. We conclude that the violations relevant to this lawsuit are violations of the covenant against antennas. Violations of other covenants, *e.g.,* violations involving stored disabled vehicles, campers, boats, and building materials, are not relevant to whether the covenant against antennas has been abandoned or not uniformly enforced.

According to the record in this case, Tydings and Winslow erected satellite dishes in violation of the covenant against antennas, and the Association sued to have both of those removed. The record also shows that a third homeowner, Carlile, had an outside, traditional TV antenna that allegedly violated the covenant, but the Association successfully procured its removal in 1988 or 1989. The record does not show any other violations of the covenant against antennas, nor does it show that the Association failed to enforce any such violations. Thus, it cannot be said as a matter of law that the Association abandoned or selectively enforced the covenant against antennas.

Tydings argue that the covenant against antennas violates Federal Communications Commission regulations. That argument is devoid of merit.

The trial court awarded reasonable attorney fees pursuant to article 14, section 2 of the CC&R's. Because neither party has yet prevailed in this litigation, that award is vacated.

Reversed and remanded for further proceedings. Neither side is awarded reasonable attorney fees on appeal, but the Association shall receive its costs.

SEINFELD, A.C.J., and PETERSON, J. Pro Tem., concur.

Reconsideration denied January 28, 1994.

Review granted at 124 Wn.2d 1007 (1994).