John W. **BARTON, Sr. and Robert O. Butler, Sr. Plaintiffs**

v.

**FRED NETTERVILLE LUMBER CO. Defendant**

No. CIV.A.5:03–CV–145BN.

United States District Court, S.D. Mississippi, Western Division.

May 6, 2004.

Peter Larkin Doran, Wells, Moore, Simmons & Hubbard, Jackson, MS, Stephen Chiccarelli, Michael P. Fruge', Breazeale, Sachse & Wilson, Baton Rouge, LA, for John W. Barton, Sr., Robert O. Butler, Sr., plaintiffs.

Bruce M. Kuehnle, Jr., Bruce M. Kuehnle, Jr., PLLC, Natchez, MS, for Fred Netterville Lumber Company, defendant.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the following Motions:

1) the Motion for Summary Judgment of Plaintiff John Barton and Plaintiff Robert Butler; and

2) the Motion for Summary Judgment of Defendant Fred Netterville Lumber Co. (hereinafter "Netterville").

Having considered the Motions, the Responses, the Rebuttals and all attachments to each, as well as supporting and opposing authority, the Court finds that:

1) the Motion for Summary Judgment of Plaintiffs Barton and Butler is not well taken and should be denied; and

2) the Motion for Summary Judgment of Defendant Netterville is well taken and should be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This cause of action arises out of a deed restriction contained in the property history of a large tract of land located in Wilkinson County, Mississippi. Prior to July 20, 1995, the property in question was owned by Netterville. During that time frame (and presumably still today) Netterville owned and operated a hardwood sawmill in Wilkinson County at a location near the subject property. Therefore, when it sought to sell the subject property, Netterville required the inclusion of a deed restriction which prohibited operation of a "hardwood sawmill" on the property for a period of 30 years.[1] Caresco, Inc. (hereinafter "Caresco") agreed to such a restriction. The property was sold from Netterville to Caresco by a Warranty Deed dated July 20, 1995 (hereinafter "July 20 Warranty Deed"). *See*, Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1," July 20 Warranty Deed.

The primary shareholders of Caresco were C. Danny Carter and Mary Carter. Caresco and the Carters incurred debt with Commercial Bank of Woodville, Mississippi (hereinafter "Commercial Bank"), for which the subject property was pledged as security. On April 26, 2000, after the security interest was created in favor of Commercial Bank, Caresco conveyed the subject property by Quitclaim Deed (hereinafter "April 26 Quitclaim Deed") to CFP, Inc. (hereinafter "CFP"). *See*, Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "3," April 26 Quitclaim Deed. The April 26 Quitclaim Deed contained no covenant restricting land use. The Court notes that on the April 26 Quit-

claim Deed, C. Danny Carter signed the instrument as both the president of Caresco (the grantor) and as the president of CFP (the grantee). *Id.* The Court further notes that both Plaintiff Barton and Plaintiff Butler are officers of CFP. *See*, Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "4," Mississippi Secretary of State CorpSnap.

Through an Agreement executed between Plaintiff Barton and Commercial Bank on October 18, 2001 (hereinafter "Agreement"), Barton acquired an interest in the loan pertaining to the subject property. *See*, Plaintiffs' Motion for Summary Judgment, Exhibit "2," Agreement. As a result of the Agreement, Barton became a secured party in the Land Deed of Trust which encumbers the property. *Id.* One year later on October 18, 2002, Barton assigned Plaintiff Butler an interest in the loan and the Land Deed of Trust. *See*, Plaintiffs' Motion for Summary Judgment, Exhibit "3," Assignment.

The subject suit was filed on October 18, 2002.[2] Plaintiffs Barton and Butler contend that the deed restriction in the July 20 Warranty Deed, which prohibits operation of a hardwood sawmill on the property for 30 years from the date of the July 20 Warranty Deed, is unenforceable. Through the Complaint, Plaintiffs pray for a declaration from this Court that the deed restriction is null and void. The reason that Plaintiffs seek such a declaration is that the deed restriction allegedly adversely affects the value of the property. Plaintiffs contend that they have standing to bring this suit because they are holders of a security interest in the subject property.

---

1. The specific language of the deed restriction is presented below.

2. The suit was originally brought in the United States District Court for the Middle District of Louisiana. It was later transferred to this Court.

Plaintiffs filed their Motion for Summary Judgment on July 7, 2003, and Defendant filed its Motion for Summary Judgment on January 12, 2004. Because the issues presented are legal in nature and there are no genuine issues of material fact, both of these Motions are now ripe for decision by the Court.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

## III. SUMMARY JUDGMENT ANALYSIS

Because each of the two Motions for Summary Judgment essentially present arguments that are diametrically opposed to the other, separate analyses are not required. Plaintiffs seek a declaration that the restrictive covenant in the July 20 Warranty Deed is unenforceable, while Defendants pray for a finding that the covenant is enforceable. The restrictive covenant states:

3. That the above described lands nor any part thereof shall be used for the operation of a "hardwood sawmill" by the Grantee [Caresco] or any successor in title to the Grantee or Lessee of the above described property for a period of thirty (30) years from the date hereof without the written consent of Grantors [Netterville] or the Successors of Grantor.

Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1," July 20 Warranty Deed, p. 3, ¶ 3.

■■■ Covenants involving the use or restriction of use of real estate are classified as either real covenants or personal covenants. *Vulcan Materials Co. v. Miller*, 691 So.2d 908, 913 (Miss.1997) (citation omitted). The difference is that "a personal covenant creates a personal obligation or right enforceable at law only between the original covenanting parties, whereas a real covenant creates a servitude upon the realty (the servient estate) for the benefit of another parcel of land (the dominant estate)." *Id.* (citation omitted). If a covenant is a real covenant, it is said to "run with the land." *Id.* at 914 (citation omitted). For a covenant to run with the land, three conditions must be met. *Vulcan*, 691 So.2d at 914. The conditions are:

(1) the covenanting parties intended to create such a covenant; (2) privity of estate exists between the person claiming the right to enforce the covenant and the person upon whom the burden of the covenant is to be imposed; and (3) the covenant "touches and concerns" the land in question.

*Id.* (citation omitted).

In the subject case, the parties agree that the first two conditions are met; i.e., Netterville and Caresco intended to create the deed restriction quoted above, and privity of estate exists between the affected parties. In issue is whether the deed restriction "touches and concerns" the land.

■■■ Mississippi case law on the "touches and concerns" issue is scant. The *Vulcan* court provides the most detailed analysis of the issue.

The test whether a covenant will or will not run with the land depends not so much on whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied. Those covenants that are generally held to run with the land and to inure to the benefit of the assignee are such as ordinarily affect the land itself and confer a benefit on the grantor.

*A covenant that imposes a burden on real property for the benefit of the grantor personally does not follow the land into the possession of an assignee, for such a covenant is personal to the grantor and does not run with the land,* although the deed may expressly state that the covenant runs with the property.

*Vulcan*, 691 So.2d at 914 (emphasis in original) (citation omitted). In summary, if a covenant or deed restriction benefits the grantor personally, and serves no real benefit to the land, then the covenant is personal in nature and does not "run with the land" upon a subsequent sale of the property.

■■■ As set forth above, the July 20 Warranty Deed from Netterville to Caresco contains the deed restriction in question. If the deed restriction which forbids operation of a hardwood sawmill on the subject property is a benefit personal to Netterville, then its enforceability ceased upon the subsequent transfer of the property from Caresco to CFP via the April 26 Quitclaim Deed. If the deed restriction is a benefit to the property still owned by Netterville (the dominant estate), then it is non-personal to Netterville and is consequently enforceable as to CFP and Plaintiffs herein. Because of the dearth of Mississippi case law that is either fact specific to the subject issue, or that directly addresses the "touches and concerns"

factor set forth in *Vulcan,* the Court must look to the decisions of other jurisdictions.[3]

The Court first looks to decisions in other jurisdictions which address whether restrictive covenants, in general, "touch and concern" the properties in question. In *Rolling Lands Inv., L.C. v. N.W. Airport Management, L.P.,* 111 S.W.3d 187, 200 (Tex.App.—Texarkana 2003), the Texas Court of Appeals held that a covenant restricting aircraft fueling rights on a tract of land adjoining an airport was a covenant that "touched and concerned" the property. In another case decided in Texas state court, the Court of Appeals held that a restrictive covenant touched and concerned the land "because it limit[ed] the use to which the land [could] be put." *Ehler v. B.T. Suppenas, Ltd.,* 74 S.W.3d 515, 521 (Tex.App.—Amarillo 2003). In *Tennsco Corp. v. Attea,* No. M2001–01378–COA–R3–CV, 2002 WL 1298808 at *2 (Tenn.Ct.App. June 13, 2002), the Tennessee Court of Appeals found that "covenants containing building restrictions, entered into between owners in fee, are almost universally held to satisfy the 'touch and concern' requirement—both as to the burden and the benefit."

Two cases decided by courts in Massachusetts are in accord with the decisions rendered by the courts of Texas and Tennessee. First, in *Exit 1 Properties, Ltd. Partnership v. Mobil Oil Corp.,* No. 951788B, 1995 WL 1146125 at *6 (Mass. Oct. 18, 1995), the court held that the "touches and concerns" factor is met if the covenant in question limits land use. Second, the court in *Cavaretta v. Greyhound Real Estate Fin. Co.,* Civ. A. No. 93–

11003–MLW, 1995 WL 791943 at *6 (D.Mass. Dec. 21, 1995), held that restrictions on the use and development of a marina property "touched and concerned" the land. These cases from Massachusetts and the cases from Texas and Tennessee tend to indicate that land use restrictions, in a general sense, do "touch and concern" the effected properties.

The next issue addressed is whether a restrictive covenant which either decreases the value of the servient estate or increases the value of the dominant estate, "touches and concerns" the property.[4] In *Sea Watch Stores Limited Liability Co. v. Council of Unit Owners of Sea Watch Condominium,* 115 Md.App. 5, 691 A.2d 750, 757 (1997), the Maryland Court of Special Appeals held that a covenant which limited land use, thus decreasing its value, did "touch and concern" the land. The Court of Appeals of Washington held that "[a] covenant touches and concerns the land when, by restricting the use of one parcel, it enhances the value of another." *Mountain Park Homeowners Ass'n, Inc. v. Tydings,* 72 Wash.App. 139, 864 P.2d 392, 396 (1993) (citations omitted). Under North Carolina law, "[t]o meet the requirement that the covenant touch and concern the dominant estate, it must be shown that the covenant somehow affects the dominant estate by, for example, increasing the value of the dominant estate." *Runyon v. Paley,* 331 N.C. 293, 416 S.E.2d 177, 183 (1992). Finally, in *LuMac Dev. Corp. v. Buck Point Limited Partnership,* 61 Ohio App.3d 558, 573 N.E.2d 681, 684 (1988), the Court of Appeals of Ohio found that a

**3.** Many published decisions in Mississippi and other jurisdictions address the issue of whether restrictive covenants "run with the land." However, the vast majority of those cases do not specifically address the "touches and concerns" factor set forth in *Vulcan.*

**4.** Although Plaintiffs contend that the subject deed restriction does not increase the value of the Netterville property (Memorandum in Support of Plaintiffs' Motion for Summary Judgment, unnumbered p. 6), Plaintiffs acknowledge that the restriction does decrease the value of the CFP property (Complaint, p. 3, ¶ 11).

restriction which limited the use of property "touched and concerned" the property because it increased the value of the dominant estate and decreased the value of the servient estate.

The holdings in these cases indicate that a property use restriction which either decreases the value of the servient estate or increases the value of the dominant estate does "touch and concern" the property. These holdings are in partial accord with *Vulcan*, which states that "[t]he test whether a covenant will or will not run with the land depends...on whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied." *Vulcan*, 691 So.2d at 914. As indicated by the foregoing quote, the *Vulcan* court addressed the issue of enhancement in value, presumably of the dominant estate. It did not address the issue of whether a decrease in the value of the servient estate resulting from a deed restriction satisfies the "touches and concerns test." This Court must therefore rely on case law from other jurisdictions in addressing the latter issue.

The final battery of cases considered herewith addresses the issue of whether land use restrictions that are essentially noncompetitive covenants are typically found to "touch and concern" property. Plaintiffs appear to argue that the subject deed restriction is a personal covenant rather than a real covenant because the sawmill operation located on Defendant's property is the true beneficiary of the covenant; i.e., Defendant's business, rather than Defendant's property, is enhanced because of the prohibition against operating a hardwood sawmill on the servient estate. However, Plaintiffs cite no case law holding that a covenant or restriction which effectively operates as a noncompetitive covenant is a personal covenant. To the contrary, the majority of persuasive

case law indicates that noncompetitive restrictive covenants do "touch and concern" property.

The Supreme Court of New Jersey canvassed cases addressing this issue in *Davidson Bros., Inc. v. D. Katz & Sons, Inc.*, 121 N.J. 196, 579 A.2d 288 (1990). The court found that

> the majority of courts that have retained the "touch and concern" test have found that noncompetition covenants meet the test's requirements. *See, e.g., Dick v. Sears–Roebuck & Co.*, 115 Conn. 122, 160 A. 432 (1932) (holding "touch and concern" element satisfied where noncompetition covenants restrained "use to which the land may be put in the future as well as in the present, and which might very likely affect its value"); *Singer v. Wong*, 35 Conn.Supp. 640, 404 A.2d 124 (1978) (restrictive covenant in deed providing that premises not be used as shopping center "touched and concerned" land because it materially affected value of land); *Rosen v. Wolff*, 152 Ga. 578, 110 S.E. 877 (1922) ("touch and concern" rule satisfied where noncompetition covenant affected nature, quality, value, or mode of enjoyment of demised premises); *Whitinsville Plaza, Inc. v. Kotseas, supra*, 378 Mass. 85, 390 N.E.2d 243 (noncompetition covenant satisfied "touch and concern" rule within the ordinary sense and meaning of the phrase"); *Gonzales v. Reynolds*, 34 N.M. 35, 275 P. 922 (1929) (noncompetition covenant satisfied "touch and concern" requirement by affecting use or value of it). *But see Savings, Inc. v. City of Blytheville*, 240 Ark. 558, 401 S.W.2d 26 (1966) (anticompetitive agreement increased value of land only indirectly therefore did not "touch and concern"); *Kettle River R. Co. v. Eastern Ry. Co.*, 41 Minn. 461, 43 N.W. 469 (1889) (covenant that denied access to other railroads did not "touch and con-

cern" land inasmuch as it was not a "privilege affecting the land" of either party to covenant). *See generally McLoone, supra,* 9 Ariz.L.Rev. at 448 n. 28 (listing cases that recognize that a covenant not to use land competitively meets the "touch and concern" test, notwithstanding diverse definitions of "touch and concern").

*Id.* at 294; *see also, Hillis v. Powers,* 875 S.W.2d 273 (Tenn.Ct.App.1993) (upholding the validity of a deed restriction prohibiting the sale of gasoline on a property); *Metro. Inv. Co. v. Sine,* 14 Utah 2d 36, 376 P.2d 940 (1962) (upholding the validity of a deed restriction prohibiting the construction of a motel on a property). The holdings in these cases further support a finding that the subject deed restriction "touches and concerns" the property.

Although *Vulcan,* a Mississippi case, sets forth the standards for determining whether a covenant "touch and concern" a property, this Court is aware of no Mississippi case law applying the "touches and concerns" tests to facts comparable to the facts in this case. Therefore, the Court must make an *"Erie* guess" as to how the Mississippi Supreme Court would rule in applying *Vulcan* to the facts of this case.

In making this determination, the Court relies on the persuasive authority cited above from other jurisdictions. The majority of jurisdictions surveyed by this Court hold that: (1) land use restrictions, in general, do "touch and concern" property; (2) restrictive covenants which either increase the value of the dominant estate or decreases the value of the servient estate, do "touch and concern" property; and (3) land use restrictions which effectively operate as noncompetitive covenants, do "touch and concern" property. Applying these legal principles to the facts of this case supports a finding that the subject deed restriction "touches and concerns" the property because: (1) the sub-

ject deed restriction is obviously a land use restriction; (2) as admitted by Plaintiffs, the subject deed restriction decreases the value of the servient estate; and (3) the subject deed restriction effectively operate as a noncompetitive covenant.

Based on the above holdings, the Court finds that the subject deed restriction is a real covenant as opposed to a personal covenant, and that it does "touch and concern" both the dominant and the servient estate. The Court therefore finds that summary judgment must be granted in favor of Defendant to the extent that the subject deed restriction is a real covenant which runs with the land and binds subsequent purchasers and/or interest holders in the subject property.

 Plaintiffs argue in the alternative that the deed restriction is unenforceable because it is ambiguous. Plaintiffs make a two-pronged argument on this issue. First, they contend that the restriction against operation of a "hardwood sawmill" on the servient estate is ambiguous because " '[h]ardwood' is not defined in the Warranty Deed, nor does the Warranty Deed contain any examples of what is contemplated by 'hardwood.' " Memorandum in Support of Plaintiffs' Motion for Summary Judgment, unnumbered p. 6. This argument is not well taken. Both the term "hardwood" and the term "sawmill" are plainly defined in various reference sources. Furthermore, the property is located in an area of Mississippi where the timber industry and timber related industries are common. Accordingly, participants in that real estate market are, or at least should be familiar with the definition of the phrase "hardwood sawmill."

 Second, Plaintiffs argue that "[t]he Warranty Deed also does not state that [the deed restriction] 'runs with the land.' Therefore, it is not clear from the face of the Warranty Deed that the covenant is

merely a personal one or one that runs with the land." Memorandum in Support of Plaintiffs' Motion for Summary Judgment, unnumbered p. 7. The Court disagrees. The July 20 Warranty Deed clearly states that the restriction applies to "the grantee or any successor in title to the Grantee or Lessee of the above described property...." Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment, Exhibit "1," July 20 Warranty Deed, p. 3, ¶ 3. Based on this language, the Court finds that no ambiguity exists in the language of the July 20 Warranty Deed regarding the issue of whether the deed restriction was to "run with the land."

The Court finds that both of Plaintiffs' arguments regarding ambiguity in the language of the July 20 Warranty Deed are without merit. The Court therefore finds that summary Judgment must be granted in favor of Defendant on this issue.

## IV. CONCLUSION

Based on the reasons set forth in this Opinion, the Court finds that the subject deed restriction is a real covenant that "runs with the land," thus it is binding on subsequent purchasers and/or interest holders in the property. The Court further finds that the language of the deed restriction is sufficiently clear that it cannot be voided on the basis of ambiguity. Based on these findings, Plaintiffs' Motion for Summary Judgment must be denied, and Defendant's Motion for Summary Judgment must be granted. As the denial of Plaintiffs' Motion and the granting of Defendant's Motion dispose of all issues presented in this case, the case should be finally dismissed at this stage.

Although the Defendant did not file a cross-claim, implicit in its defense of this action is a cross-claim for a declaratory judgment which will clarify the land records of Wilkinson County, Mississippi, regarding the property in question. The Court *sua sponte* will grant a declaratory judgment in favor of the Defendant.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Plaintiff John Barton and Plaintiff Robert Butler [14–1] is hereby denied.

IT IS FURTHER ORDERED that Motion for Summary Judgment of Defendant Netterville [24–1] is hereby granted and it is granted a declaratory judgment

A Final Judgment dismissing this case with prejudice will be entered on this day.