IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| KELLY S. DEAN and ANNA MARIE DEAN, husband and wife, | ) ) ) | No. 34501-7-III |
| Respondents, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| TIMOTHY MILLER and DIANE MILLER, husband and wife, | ) ) ) | |
| Appellants. | ) ) | |

SIDDOWAY, J. — Timothy and Diane Miller appeal the trial court's summary

judgment in favor of their neighbors, Kelly and Anna Marie Dean, enforcing restrictions

on use of the Millers' land that were created by a 1993 declaration of covenants executed

by the Millers' predecessors in interest. The declaration was incorporated by reference in

the deed by which the Millers acquired the land. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In December 2013, Timothy and Diane Miller purchased a riverfront lot on the

Wenatchee River from Margaret Dykes. The long, narrow lot was denominated Lot 10

on the plat recorded by the Darling Land Company in 1910. The Millers' new neighbors

to the east were Kelly and Anna Marie Dean, who had purchased their similar, long,

narrow parcel—Lot 9—in 2002.

Ms. Dykes's statutory warranty deed conveying Lot 10 to the Millers stated that

the conveyance was "[s]ubject to[:] . . . covenants, conditions and restrictions imposed by

instrument recorded on September 30, 1993, under recording no. 9309300059." Clerk's Papers (CP) at 16 (some capitalization omitted). That instrument, dated September 29, 1993, is entitled "Declaration of Covenant" and was executed and recorded in connection with a statutory warranty deed conveying Lot 10 from William and Mary Anne Walsdorf to William and Kathleen Massey.[1] CP at 23-24.

At the time the Walsdorfs sold Lot 10 to the Masseys, they owned both Lot 9 and Lot 10. They retained Lot 9 following the conveyance. The declaration of covenants,[2] which was signed by both the Walsdorfs and the Masseys, recited the Walsdorfs' ownership of Lot 10, its legal description, and then provided that "the grantee, William L. Massey and Kathleen A. Massey"—the Millers' predecessors in interest—and "his/her heirs, successors and assigns agrees":

A.    There will be no commercial use of the above described Lot.
B.    No structure shall be erected, placed or permitted on the Lot other than one single family dwelling of at least 1,000 square feet and a private garage. No part of any structure shall be over two stories high above the ground, and no closer than 15 feet from the boundary of Lot 9.

. . . .
D.    No trailer, mobile home, basement, tent, shack, or other outbuildings shall be used . . . as a residence, except during construction of a permanent residence on said Lot.

---

[1] Although the warranty deed bears a typewritten "Dated" date of September 24, 1993, the notarial jurat discloses that it, like the Declaration of Covenant, was actually signed on September 29. CP at 22. The recording stamps on the two documents reveal that they were recorded at the same time, September 30, 1993.

[2] We refer to the 1993 Declaration of Covenant as a declaration of covenants, since it includes several agreed limitations on the use of Lot 10.

2

E.  No animals, poultry or livestock of any kind . . . shall be raised bred, or kept on the above described Lot . . . .

F.  The Lot shall not be used or maintained as a dumping ground for rubbish. . . .

. . . .

These covenants shall run with the land and shall be binding on all parties having or acquiring any right, title, or interest in the land described herein or any part thereof, and shall inure to the benefit of each owner thereof.

CP at 23-24.

Despite incorporation of this 1993 declaration of covenants in the deed to the Millers, in February 2015, Mr. Miller applied for a short plat to divide Lot 10 into two residential lots. Mr. Dean wrote to Mr. Miller thereafter, pointing out the use restrictions created in 1993 and asking Mr. Miller to withdraw his application. Instead, the Millers executed and recorded a revocation of covenant, which identifies the Millers as both grantor and grantee. In purporting to revoke the September 30, 1993 declaration of covenants, the Millers claimed to do so as "the owners of the benefited and encumbered property described herein." CP at 26. The revocation states that the 1993 covenant "shall be of no further force and effect" and that the revocation "shall be effective immediately." *Id.*

In July 2015, the Deans filed the action below. They sought a declaration that the use restrictions remain in effect and asked the court to enjoin the Millers from (1) building any structure on Lot 10 beyond the existing single family dwelling and a private garage and (2) otherwise using the property in violation of the use restrictions. In an

3

answer and counterclaim, the Millers asserted that the use restrictions failed to include a

legal description for any benefited property, which they claim is required by the statute of

frauds. They also contended that the covenant "at most" was personal to the Deans'

predecessors in interest and was not conveyed to the Deans, who lacked standing to

enforce it. CP at 48.

Both sides filed motions for summary judgment. After initially granting the

Millers' motion for partial summary judgment, the trial court reversed itself on

reconsideration and granted summary judgment to the Deans. It concluded that the

declaration of covenants complies with the statute of frauds and runs with the land and,

alternatively, that the use restrictions are enforceable as an equitable servitude.

The Millers appeal.

## ANALYSIS

Whether summary judgment was properly granted in this case depends on whether

the use restrictions contained in the 1993 declaration of covenants are valid and

enforceable covenants running with the land.

A covenant is:

> "[A]n agreement or promise of two or more parties that something is
> done, will be done, or will not be done. In modern usage, the term
> covenant generally describes promises relating to real property that
> are created in conveyances or other instruments."

*Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 690-91, 974 P.2d 836 (1999) (alteration in

4

original) (quoting 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.01[2], at 60-5 (1998) (footnotes omitted)). "There are essentially two kinds of covenants that run with the land—real covenants and equitable covenants." *Id.* at 691.

The Washington Supreme Court observed in *Hollis* that "Washington cases have generally not distinguished between the two kinds of covenants." *Id.* (citing 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE—PROPERTY LAW § 3.1, at 121 (1995)). Nevertheless, the Supreme Court has never expressly eliminated the distinction between real covenants and equitable servitudes,[3] and this court has continued to analyze each theory separately, taking into consideration the difference in their traditional requirements. *See* 1 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK SERIES: REAL ESTATE ESSENTIALS § 8.2(2), at 8-5 to 8-7 (4th ed. 2014) (discussing *Lake Limerick Country Club v. Hunt Mfg. Homes, Inc.*, 120 Wn. App. 246, 253, 84 P.3d 295 (2004) and *Dickson v. Kates*, 132 Wn. App. 724, 133 P.3d 498 (2006)).

In reviewing an order on summary judgment, we engage in the same inquiry as the trial court. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). An order granting summary judgment is reviewed de novo, "considering

---

[3] Real covenants have historically been those that meet the requirements evolving from the early English common law decision of *Spencer's Case* (1583) 77 Eng. Rep. 72; 5 Co. Rep. 16 a (Q.B.), while equitable servitudes can be enforced in equity if they satisfy the less stringent doctrine established in *Tulk v. Moxhay* (1848) 41 Eng. Rep. 1143; 2 Ph. 774 (Ch.). 1 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK SERIES: REAL ESTATE ESSENTIALS § 8.2, at 8-3 (4th ed. 2014).

the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

### I. *The covenants included in the declaration of covenants run with the land*

In Washington, the requirements for the running of a real covenant are (1) the covenant must have been enforceable between the original parties as a matter of contract law, including the statute of frauds; (2) the covenant must touch and concern both the land to be benefitted and the land to be burdened; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate, i.e., privity between the original parties to the covenant and the present disputants; and (5) there must be horizontal privity of estate, or privity between the original parties. *Lake Arrowhead Cmty. Club, Inc. v. Looney*, 112 Wn.2d 288, 295, 770 P.2d 1046 (1989) (quoting *Leighton v. Leonard*, 22 Wn. App. 136, 139, 589 P.2d 279 (1978)); *Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wn. App. 229, 257, 215 P.3d 990 (2009). The Millers dispute the presence of only the first three requirements.

*Enforceable contract.* The Millers' principal contention is that the declaration of covenants is not enforceable because it does not satisfy the statute of frauds. They point out that it includes a legal description of Lot 10 but fails to recite or legally describe the

6

property that is benefited. Yet they provide no authority that the statute of frauds requires an express recital and legal description of the benefited property.

The Millers cite authority for the requirement that "'every contract creating or evidencing any encumbrance upon real estate, shall be by deed'" and that every deed "'shall be in writing, signed by the party bound thereby, and acknowledged.'" Br. of Appellant at 9 (quoting RCW 64.04.010, .020). The declaration of covenants satisfies those requirements.

They then cite authority that a contract or deed for the *conveyance of land* must contain a description of the land sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description. *Id.* at 10 (citing *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995)). But they do not explain why they view a covenant that restricts land use as a "conveyance" of the benefited land. The several cases they cite all deal with the need to sufficiently describe land that is conveyed or to be conveyed. *E.g., Berg*, 125 Wn.2d at 551 (to convey an easement, its exact location need not be identified but "[t]he servient estate must be sufficiently described"); *Martin v. Siegel*, 35 Wn.2d 223, 226, 212 P.2d 107 (1949) (describing the sufficiency of legal descriptions in "contracts for the sale of real property"); *Halbert v. Forney*, 88 Wn. App. 669, 945 P.2d 1137 (1997) (earnest money agreement for the sale of real property). No violation of the statute of frauds is shown.

7

Whether or not it is subject to the statute of frauds, every contract must be definite enough to determine, with at least a reasonable degree of certainty, the nature and extent of the obligation that has been assumed. *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wn. App. 361, 376-77, 44 P.3d 929 (2002). In determining the meaning of a restrictive covenant, the "context rule" applies. *Hollis*, 137 Wn.2d at 696. Viewed in context, the declaration of covenants is sufficiently definite in benefiting Lot 9. Not only does it refer to Lot 9 ("No part of any structure shall be over two stories high above the ground, and no closer than 15 feet from the boundary of Lot 9") but the Masseys' promise to abide by the restrictions was made to the Walsdorfs, the Walsdorfs owned Lot 9, they were retaining Lot 9, and Lot 9 shared a boundary with Lot 10. CP at 23. The Millers presented no argument or evidence of any genuine confusion or dispute over the identity of the benefited property; they merely asserted, incorrectly, that a legal description of Lot 9 was required. The requirement of an enforceable contract is demonstrated by the summary judgment record.

*Touching and concerning the land.* In arguing that the requirement that the covenant touch and concern the land is not met, the Millers repeat their argument that Lot 9 is not legally described in the declaration of covenants. The lack of a legal description of Lot 9 is irrelevant to this requirement.

"A covenant touches and concerns the land if it is connected with the use and enjoyment of the land." *Deep Water Brewing*, 152 Wn. App. at 258; *Rodruck v. Sand*

8

*Point Maint. Comm'n*, 48 Wn.2d 565, 574-75, 295 P.2d 714 (1956). For a burdened parcel, a use restriction that limits the use of the land or diminishes the value of the parcel touches and concerns the land. *Hollis*, 137 Wn.2d at 692; *Leighton*, 22 Wn. App. at 139-40. For a benefited parcel, the covenant must be "so related to the land as to enhance its value and confer a benefit upon it." *See Rodruck*, 48 Wn.2d at 575.

The limitation on the use of Lot 10 and the corresponding enhancement of the value of Lot 9 both touch and concern the land.

*Intent to bind successors in interest.* The declaration of covenants states, "These covenants shall run with the land and shall be binding on all parties having or acquiring any right, title, or interest in the land described herein or any part thereof, and shall inure to the benefit of each owner thereof." CP at 23-24. It is hard to imagine how the parties' intent to bind successors could be clearer.

Yet the Millers contend that this requirement, too, is not met without an explicit identification and legal description of the benefited property. They cite no legal support. Properly understood, the requirement of an intent to bind successors in interest is clearly set forth in the declaration.

II. *The Millers were not owners of the sole benefited property for purposes of the defense of merger and the power to revoke the covenants*

It is a defense to a once-enforceable covenant running with the land that the covenant has been terminated by merger because the same person has become the owner

9

of both the benefited and the burdened land. *Schlager v. Bellport*, 118 Wn. App. 536, 539, 76 P.3d 778 (2003). And the parties to a covenant have the power to revoke it. *Cf. Save Sea Lawn Acres v. Mercer*, 140 Wn. App. 411, 166 P.3d 770 (2007) (accepting the proposition as a given in holding that lot owners in an adjacent subdivision had no power to interfere). The Millers contend that because Lot 10 is the only property identified by more than a passing reference in the declaration of covenants and the only one legally described, it was the only property burdened or benefited by the covenants. Accordingly, they argue, the covenants either terminated by merger or, if not, the Millers can revoke them.

We have already held that Lot 9 is the benefited property. We also observe that an interpretation of the declaration as burdening and benefiting only Lot 10, at the very moment the Walsdorfs were conveying title to that lot, is absurd. We do not adopt interpretations that render a contract, or part of it, absurd or meaningless. *Kelley v. Tonda*, 198 Wn. App. 303, 316, 393 P.3d 824 (2017).

> III.   *The covenants included in the declaration of covenants are enforceable as an equitable servitude*

In Washington, the traditional elements giving rise to an equitable servitude are

> (1) a promise, in writing, which is enforceable between the original parties; (2) which touches and concerns the land or which the parties intend to bind successors; and (3) which is sought to be enforced by an original party or a successor, against an original party or successor in possession; (4) who has notice of the covenant.

10

*Hollis*, 137 Wn.2d at 691. In its most recent decision on equitable servitudes limiting the use of land, our Supreme Court clarified the first element, holding that a promise to limit the use of land may be implied, at least when there is some writing (such as a notation on a plat) that supports imposition of the burden. *Riverview Cmty. Grp. v. Spencer & Livingston*, 181 Wn.2d 888, 897-98, 337 P.3d 1076 (2014). The major distinction between running of real covenants and equitable servitudes is that equitable servitudes require notice but not horizontal privity. WASHINGTON REAL PROPERTY DESKBOOK SERIES: REAL ESTATE ESSENTIALS, § 8.2(2) at 8-5.

The Millers make only one argument against the existence of an enforceable equitable servitude that we have not already rejected in analyzing the existence of a real covenant. Relying on *Johnson v. Mt. Baker Park Presbyterian Church*, 113 Wash. 458, 194 P. 536 (1920) and *Riverview*, they suggest that a fifth element must be present to enforce a covenant as an equitable servitude: the benefited party must have been induced to purchase their property by promises of use restrictions that will enhance its value. They argue the Deans presented no evidence of such an inducement in support of their motion for summary judgment.

Neither *Johnson* nor *Riverview* holds that proof of acts or conduct inducing reliance is a fifth requirement for an equitable servitude. Instead, because the benefited parties in those two cases could not satisfy the first element by pointing to an enforceable promise in writing, they substituted evidence of conduct, representations, and acts that

11

No. 34501-7-III
*Dean v. Miller*

the courts held could not be repudiated. *Riverview*, 181 Wn.2d at 896-97 (discussing *Johnson*). The Deans can point to an enforceable promise in writing: the declaration of covenants. They do not need substitute evidence.

The elements of an enforceable equitable servitude are shown.

Because the declaration of covenants creates valid and enforceable covenants running with the land, the Deans had a clear legal or equitable right that could be enforced by injunction. The trial court's orders are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, C.J.

12