Savings, Inc. *v.* City of Blytheville

5-3803                                                401 S. W. 2d 26

Opinion delivered April 4, 1966

*Wade H. Lagrone,* Tupelo, Miss., *Marcus Evrard, Graham Sudbury,* for appellant.

*Everett Edsel Harber,* for appellee.

Carleton Harris, Chief Justice. Mary E. Hester and C. R. Hester, her husband, were the owners of Lot 4, Block 1, of Wilson's Second Addition to the City of Blytheville, and also owned Lot 10, Block 1, of Wilson's Third Addition to the City of Blytheville. Lot 4 is located on the west side of Highway No. 61, and Lot 10 is located on the east side, almost directly across the highway. On October 4, 1952, the Hesters leased the east 80 feet of Lot 4 to Savings, Inc., appellant herein, for a period of five years, with three options for additional terms of five years each. The property was to be used for the operation of a service station by the lessee, and a monthly rental of $200.00 per month was to be paid by appellant. On December 11, 1953, the Hesters, as lessors, and Savings, Inc., as lessee, executed an instrument entitled "Amendment to Lease Contract." This

amendment referred to the original lease agreement, heretofore mentioned, and amended that agreement as follows:

Paragraph 3 was amended to provide that the rent should be $300.00 per month, beginning January 1, 1954; further, an additional rental of 1 cent per gallon should be paid on all gasoline sold in excess of 60,000 gallons per month; if the margin between cost and sale price fell below 4 cents per gallon, then the 1 cent per gallon additional rental should be suspended until the margin returned to at least 4 cents per gallon.

Paragraph 8 was amended to provide that the right of ingress and egress, retained by the Hesters, should be exercised only across the south 22 feet of the property, and appellant and its employees were not to park cars or trucks on that particular 22 feet (except trucks unloading gas).

A new paragraph, No. 9, was added to the original lease

"The Lessors hereby agree that neither of them will engage in the service station business in the City of Blytheville, or within a distance of two miles from the City limits, during the original or any renewal term of this lease. The Lessors further agree that if they should sell the property which they own immediately across the street from the leased property, they will provide in the deed a covenant that the property shall not be used for service station purposes during the original, or any renewal term, of this lease.

"In all other respects, said lease remains in full force and effect as originally written."

Pursuant to the amendments, the rent was raised to $300.00, and appellant has continued in possession of the property until the present time.

Subsequently, Mr. and Mrs. Hester executed a warranty deed to Hester Mobile Home Manufacturing, Inc., conveying Lot 4 without any reservation or limitation relative to that portion of the property leased to appellant. On December 22, 1960, the corporation executed its warranty deed to the City of Blytheville conveying the same property, and again with no reservation or limitation as to that part of the property leased and occupied by Savings, Inc. The City of Blytheville, immediately upon receiving the deed from the corporation, entered into a lease agreement with Hester Mobile Home Manufacturing, Inc., leasing the property to that corporation for a particular term and for certain rentals, the property to be reconveyed to the corporation at the end of the specified term.

On July 23, 1962, the Hesters conveyed by warranty deed Lot 10 in Block 1, mentioned at the outset of this opinion, to Joe Whisenhunt and wife, the deed however containing no restrictions or limitations, nor any covenant "that the property shall not be used for service station purposes" during the term of the Hester-Savings, Inc., lease. The Whisenhunts deeded the west 125 feet of this property to Curt's Oil Company, Inc. (no covenant in deed). Thereafter, Curt's Oil Company erected a gasoline service station and has operated same up until the present time.

Hester Mobile Home Manufacturing, Inc., was adjudged a bankrupt in Federal Court, and that court held the deed (from Hester Mobile Corporation to Blytheville) to be an equitable mortgage.[1] Appellee filed a suit against the trustee in bankruptcy to foreclose this mortgage, and Savings, Inc., was made a party to the litigation. Appellant answered, setting up the amendment, asserting that its rent should be reduced from $300.00 to $200.00 per month, because of the Hesters' violation of Section 9 of the lease in deeding Lot 10

[1]The deed had been given to the city to secure the payment of $68,000.00, derived from the sale of bonds under Amendment 49 to the Constitution of the State of Arkansas.

without the covenant that no part of Lot 10 should be used for service station purposes during the term of appellant's lease of a part of Lot 4. Subsequently, the trustee in bankruptcy executed a quitclaim deed to Lot 4 to the City of Blytheville. On trial of the issues between Savings, Inc., and the city, the court held:

"The covenant by the Hesters set forth above was a personal covenant with Savings, Inc., and as such is not binding upon the grantees of Mary E. and Charles R. Hester and subsequent grantees of the lot."

The court found that the City of Blytheville was not subject to the provisions of said lease as to the conditions imposed upon the conveyance of other property owned by the Hesters, and accordingly held that Savings, Inc., was not entitled to a reduction of the monthly rental from $300.00 to $200.00. From the decree so entered, appellant brings this appeal.

We agree with the Chancellor that the covenant by the Hesters was a personal covenant with appellant, and was accordingly not binding upon the grantees of the Hesters or subsequent grantees. The property involved in this litigation is Lot 4—not Lot 10. The fact that this type of covenant is personal was recognized many years ago. The situation here is somewhat similar to that in *Hebert* v. *Dupaty* (La.), 7 So. 580. There, Dupaty operated a livery stable in the town of Napoleonville. He sold his horses, harnesses and vehicles to Hebert and Demare, and in the same instrument, leased the premises on which the stable was located for a term of five years, with privilege of renewal. A clause was inserted in the lease wherein Dupaty agreed that he would not keep a public livery stable during the term of the lease within a radius of six miles of Napoleonville. Dupaty then sold to Dugas (another defendant) certain property in the town which included the livery stable that Dupaty had leased to Hebert and Demare. Dugas sold the property to Phelps. Phelps thereupon erected a livery stable, and operated it directly in front of the stable of Hebert and

Demare. Suit was instituted to recover damages, the complaint alleging that Dugas and Phelps had full knowledge and due notice of all the stipulations in the lease (and admittedly the defendants did possess such knowledge), and that the obligation of Dupaty to refrain from engaging in the livery stable business extended to the subsequent grantees. Dupaty himself had not broken his covenant to not operate within six miles of the town. In rejecting the complaint, the court said:

"The contention of plaintiffs that Dugas and Phelps, by purchasing from Dupaty, became bound as Dupaty was, not to keep a public livery stable within a radius of six miles of the town of Napoleonville, cannot be maintained. We do not see in what manner any process of reasoning can arrive at the legal responsibility of defendants as contended for by plaintiff. On this point in the case the opinion of the judge *a quo* is exhaustive. In his opinion he says: 'Dupaty did not stipulate that no livery stable should be kept on the balance of the property during plaintiffs' lease, but that he would not keep a livery stable himself, directly or indirectly, during that term. It was not a burden that he placed upon the property itself, but an obligation that he impressed upon himself.' "

Another early case on the point involved is *Norcross and others* v. *James and others* (Mass.), 2 N. E. 946. There, Kibbe conveyed to Flynt a valuable quarry of six acres, bounded by other land belonging to Kibbe, with covenants as follows:

"And I do, for myself, my heirs, executors, and administrators, covenant with the said Flynt, his heirs and assigns, that I am lawfully seized in fee of the aforegranted premises; that they are free of all incumbrances; that I will not open or work, or allow any person or persons to open or work, any quarry or quarries on my farm or premises in said Long Meadow."

By mesne conveyances the plaintiffs became pos-

sessed of the quarry conveyed to Flynt, and the defendants became possessed of the surrounding premises referred to in the quoted covenant. The defendants proceeded to engage in quarrying stone like that quarried by the plaintiffs, and the latter sought an injunction. Oliver Wendell Holmes, Jr., at that time a Justice of the Massachusetts Supreme Court, wrote the opinion for the court, holding that the plaintiffs were not entitled to an injunction, *i.e.*, the court held that the covenant to not "work, or allow any person or persons to open or work, any quarry or quarries on my farm or premises" was not binding upon subsequent owners of the land. In commenting on the covenant, Justice Holmes said:

"* * * In what way does it extend to the support of the plaintiff's quarry? It does not make the use of occupation of it more convenient. It does not in any way affect the use or occupation; it simply tends indirectly to increase its value, by excluding a competitor from the market for its products."

Here, the Hesters entered into a personal agreement that *neither of them* would engage in the service station business in the city of Blytheville or within a distance of two miles from the city limits during the term of the lease, and further agreed that, if they sold the property across the street (Lot 10), *they* would provide in the deed a covenant that the property should not be used for service station purposes during the term of the lease. The very wording of the instrument emphasizes its personal character, and the City of Blytheville certainly is in no position to enforce Hester's *personal covenant* with the Curt Oil Company. There was nothing in this agreement that affected Lot 4 whatsoever. As stated by Mr. Justice Holmes:

"** * It does not in any way affect the use or occupation; it simply tends indirectly to increase its value, by excluding a competitor from the market for its products."

Appellant complains that it agreed to pay the extra $100.00 per month solely on the basis of the provision that Hesters would covenant with any purchaser of Lot 10 that no service station would be placed there. However, it must be remembered that several other provisions were included in the amended lease, all of which, as far as the record shows, have been complied with. There were at least four other changes made at the time of the supplemental agreement. First, there was to be an additional rental of 1 cent per gallon on all gasoline sold in excess of 60,000 gallons per month. Second, if the margin between cost and sale price dropped below 4 cents per gallon, the 1 cent per gallon rental would be suspended. Third, the right of ingress and egress, retained by the Hesters, was to be exercised only across the south 22 feet of the property. Fourth, appellant company and its employees were not to park cars and trucks on that 22 feet (unless unloading gas). Fifth, the Hesters agreed that neither they, nor either of them, would engage in the service station business in Blytheville or within a distance of two miles from the city limits, and sixth, the agreement contained the provision here under discussion. It appears, from reading the instrument, that all of these matters were a part of the consideration for the increase in rent, and as far as the record discloses, five of the conditions have not been violated.

As stated, the covenant was a personal covenant, and the proper parties from whom to seek relief are the Hesters. The record discloses, from the testimony of Henry C. Dodge, Vice President of Savings, Inc., that construction was commenced on the Curt Oil Station, across the street, in October of 1962, but there is no explanation of why appellant did not seek appropriate relief from these persons at that time. At any rate, appellant's suit for violation of the covenant is not properly maintainable against the City of Blytheville.

Affirmed.