Cite as 2020 Ark. App. 563

# ARKANSAS COURT OF APPEALS
## DIVISIONS II & III
### No. CV-19-536

| | |
|---|---|
| BERNARD COURT, LLC<br>APPELLANT | **Opinion Delivered:** December 9, 2020 |
| V. | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-18-3261] |
| | HONORABLE ROBIN F. GREEN, JUDGE |
| WALMART, INC.<br>APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## PHILLIP T. WHITEAKER, Judge

Appellant Bernard Court, LLC ("Bernard"), appeals from an order of the Benton County Circuit Court denying its motion for summary judgment against appellee Walmart, Inc. ("Walmart"), and dismissing its complaint for declaratory judgment with prejudice.[1] We affirm in part and reverse and remand in part.

### I. *Factual and Procedural Background*

This case began when Bernard sought a declaratory judgment concerning the interpretation of a restrictive covenant contained in a deed from Walmart to Bernard's

---

[1]We previously ordered rebriefing because of deficiencies in Bernard's abstract. *Bernard Court, LLC v. Walmart, Inc.*, 2020 Ark. App. 260, 598 S.W.3d 563. Bernard submitted a substituted abstract, brief, and addendum on May 5, 2020; Walmart filed a brief containing a statement of the case asserting that the deficiencies in the abstract had not been cured. Bernard then filed an unopposed motion to supplement its abstract, which this court granted. Bernard has now cured its previous deficiencies, and we are able to reach the merits of the case.

predecessor in title. In May 1997, Walmart conveyed a parcel of property consisting of three lots on East Highland Drive in Jonesboro to Belz Burrow II. Walmart issued a deed that reflected the property was sold pursuant to a restrictive covenant. In particular, the deed declared that the property would "not be used as a grocery store/supermarket or discount department store or wholesale club, such as or similar to Target, Price Club or K-Mart," that "the land and all improvements erected or constructed thereon shall be maintained in good condition and repair," and that "such restriction shall run with and bind said land and shall inure to the benefit and be enforceable by Grantor, or an affiliated company or its successors." Through a series of transactions, Bernard became the owner of the property in 2007.[2]

Bernard subsequently developed an opportunity to lease a portion of the property to a chain store called Dirt Cheap. Because of the restrictive covenant in the deed, Bernard filed a complaint for declaratory judgment. Specifically, Bernard asked the court to determine whether the restrictive covenant would apply and prevent it from leasing the property to Dirt Cheap. Bernard urged that the restrictive covenant did not apply for two reasons: (1) the restriction was valid for only a twenty-year period of time that had already expired; and (2) Dirt Cheap was not a "discount department store or wholesale club"; thus, by its terms, the restrictive covenant did not apply. Walmart responded by claiming that the language of the restrictive covenant was clear and unambiguous; that the restriction was

---

[2]Belz Burrow II conveyed one of the three lots to Belz Burrow Bernard Court, L.P., in 1999 and the remaining two lots in 2005. After the 2005 transfer, Belz Burrow Bernard Court changed its name to Bernard Court, L.P. Bernard Court, L.P., then conveyed to Bernard.

valid for a fifty-year term; and that Dirt Cheap was a discount department store contemplated by the plain language of the restriction.

Bernard thereafter moved for summary judgment, which Walmart opposed. Essentially, the parties reargued their previously stated positions in the declaratory-judgment proceeding.[3] In its reply to Walmart's response, however, Bernard raised for the first time an argument that the restrictive covenant did not run with the land because it was personal to Walmart and did not benefit the land itself. Walmart filed a surreply to Bernard's reply for the limited purpose of addressing Bernard's new argument, contending that the restrictive covenant did, in fact, run with the land. Moreover, Walmart asserted, even if the covenant did not run with the land, it would still be enforceable as an equitable servitude.

After a hearing on Bernard's summary-judgment motion, the circuit court first found that the deed contained a restriction on land use and that the restriction was subject to the fifty-year term. The court next determined that Dirt Cheap was, in fact, a discount department store within the meaning of the restriction and that the restriction thus applied to it. On the issue of whether the restrictive covenant ran with the land, the court found that it did not because the restriction did not "touch and concern" the land itself. Nevertheless, because the court found that the covenant ultimately worked to the detriment of Walmart by reducing the value of the land when it was sold, the court concluded that the covenant was enforceable as an equitable servitude. A written order reflecting the circuit court's findings was entered on March 18, 2019, and Bernard filed a timely notice of appeal.

---

[3]Walmart also raised additional arguments that Bernard lacked standing and failed to join indispensable parties; however, these arguments were not ruled on by the circuit court and are not pertinent to any issue raised on appeal.

3

## II. *Standard of Review*

Bernard's primary argument on appeal is that the circuit court erred in denying its motion for summary judgment. Although an order denying a motion for summary judgment is generally not appealable because it is an interlocutory order, we will review certain interlocutory orders in conjunction with the appeal of a final judgment. *Nichols v. Culotches Bay Navigation Rights Comm., L.L.C.*, 2009 Ark. App. 365, at 6, 309 S.W.3d 218, 221; *see also Gammill v. Provident Life & Acc. Ins. Co.*, 346 Ark. 161, 165, 55 S.W.3d 763, 765 (2001) ("While ordinarily an order denying a motion for summary judgment is not an appealable order, such an order is appealable when it is combined with a dismissal on the merits that effectively terminates the proceeding below."). Because the circuit court's order dismissing Bernard's complaint for declaratory judgment with prejudice was a final order dismissing on the merits and terminating the proceeding below, we may review the court's denial of Bernard's motion for summary judgment. We review an order denying a motion for summary judgment for abuse of discretion. *Ozarks Unlimited Res. Coop., Inc. v. Daniels*, 333 Ark. 214, 221, 969 S.W.2d 169, 172 (1998); W*elsh v. Mid-South Bulk Servs., Inc.*, 2011 Ark. App. 728, at 3; *Karnes v. Trumbo*, 28 Ark. App. 34, 41, 770 S.W.2d 199, 202–03 (1989).

Bernard's appeal is also taken from the circuit court's dismissal with prejudice of its complaint for declaratory relief. A declaratory-judgment action seeks to avoid uncertainty and insecurity with respect to rights, status, and other legal relations. *City of Fort Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 474, 209 S.W.3d 344, 348 (2005). Here, Bernard sought a declaration from the circuit court that the restrictive covenant was time-barred by its plain terms and, alternatively, that the restrictive covenant was legally inapplicable to Bernard's lease of the subject property to Dirt Cheap or a similar retailer. Whether relief under the

Declaratory Judgment Act should be granted is a matter resting in the sound discretion of the circuit court. *Id.*; *see also O'Dell v. Peck*, 2017 Ark. App. 532, at 2 ("We review a circuit court's decision to grant a motion to dismiss [a complaint for declaratory judgment] for abuse of discretion.").

### III. *Analysis*

In this appeal, we must determine whether the terms of the restrictive covenant contained in the deed from Walmart to Bernard's predecessor in interest are enforceable. We begin by noting that generally, restrictions on the use of land are not favored in the law, and if there is any restriction on land, it must be clearly apparent. *See Royal Oaks Vista, L.L.C. v. Maddox*, 372 Ark. 119, 123, 271 S.W.3d 479, 482 (2008); *Hutchens v. Bella Vista Vill. Prop. Owners' Ass'n*, 82 Ark. App. 28, 110 S.W.3d 325 (2003). Further, our supreme court has held that a restrictive covenant will be strictly construed against limitations on the free use of land and that all doubts are resolved in favor of the unfettered use of land. *Royal Oaks*, *supra*.

Here, Bernard challenges three aspects of the restrictive covenant: (1) the length of the term of the restriction, (2) the type of store to which the restriction applies, and (3) whether the restrictive covenant runs with the land. In each challenge, Bernard asks us to interpret the restrictive covenants and the language of the deed itself. In doing so, we must determine the parties' intent as shown by the covenant, for it is the intention of the parties that governs. *McGuire v. Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988). We gather the intention of the parties not from some particular clause, but from the context of the whole agreement. *Evans v. SEECO, Inc.*, 2011 Ark. App. 739. The language of a contract as a whole should be so construed as to make apparently conflicting provisions reasonable and

5

consistent and so as not to give one of the parties an unfair and unreasonable advantage over the other. *Schnitt v. McKellar*, 244 Ark. 377, 386, 427 S.W.2d 202, 208 (1968). When the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed, and it is improper to inquire into the surrounding circumstances of the objects and purposes of the restriction to aid in its construction. *Mountain Crest, LLC v. Kimbro*, 2018 Ark. App. 626, 567 S.W.3d 888.

With these principles in mind, we now address each of Bernard's three points in turn.

## A. The Length of the Restriction

For purposes of our discussion of this point on appeal, we set out the entirety of the restrictive covenant as contained in the deed conveyed by Walmart:

> subject to the following conditions and restrictions: (i) Grantee covenants that the land will not be used as a grocery store/supermarket or discount department store or wholesale club, such as or similar to Target, Price Club or K–Mart, such restriction shall run with and bind said land and shall inure to the benefit and be enforceable by Grantor, or an affiliated company or its successors, by any appropriate proceedings at law or in equity to prevent violations of such aforesaid covenants, conditions and restrictions to recover damages for such violations; such conditions and restrictions shall remain in effect to said land for fifty (50) years; (ii) the land and all improvements erected or constructed thereon shall be maintained in good condition and repair. The aforesaid conditions shall run with and bind said Land and shall inure to the benefit of and be enforceable by Grantor, or an affiliated company or its successors, by any appropriate proceedings at law or in equity to prevent violations of such aforesaid covenants, conditions and restrictions to recover damages for such violations; however, such conditions shall remain in effect to said Land and Improvements for twenty (20) years.

The circuit court found that the deed provides two separate restrictions. First, subpart (i) states that the grantee covenants that the land will not be used as a grocery store, supermarket, discount department store, or wholesale club (the "type-of-use restriction"); second, subpart (ii) provides that the land and all improvements erected or constructed thereon shall be maintained in good condition and repair (the "good-maintenance

6

restriction"). We agree. The deed, however, contains two separate lengths of time: a fifty-year duration and a twenty-year duration. At issue is which of these two durations applies to the type-of-use restriction found in the first subpart.

Bernard argues that the twenty-year term applies to both the type-of-use restriction and the good-maintenance restriction. Bernard bases its argument on sentence structure, syntax, and punctuation. Specifically, Bernard argues that the restrictive covenant is composed of two sentences. The first sentence contains two clauses: the type-of-use restriction (subpart (i)) and the good-maintenance restriction (subpart (ii)). The fifty-year term immediately follows subpart (i), which is separated from subpart (ii) by a semicolon. Bernard then notes that the second sentence, which follows subpart (ii), contains the twenty-year term. It concludes that because the twenty-year term is contained in a separate sentence, the twenty-year term must apply to the entire preceding sentence, which contains both the type-of-use restriction and good-maintenance restriction.

Here, the circuit court rejected Bernard's argument that the twenty-year term applied to the type-of-use restriction. In doing so, it acknowledged the "punctuation issue" posited by Bernard but concluded that proper contract interpretation required reading the document "to give full force and effect to each of the words that are present and try to honor the effect and the intention that was put forth in creating the document." Reading the document as a whole, the court noted the language directing that the covenant "shall run with and bind said land" was duplicated in both subpart (i) and subpart (ii). It concluded that the repetition of the nearly identical language meant that the two subparts were intended to be "separated out," such that the fifty-year restriction applied to the type of use

7

in subpart (i), while the twenty-year term applied to the good-maintenance restriction found in subpart (ii).

As noted above, we review the circuit court's decision in this matter for an abuse of discretion. We will not find an abuse of discretion unless a circuit court acted "improvidently, thoughtlessly, [or] without due consideration." *Potter v. Holmes*, 2020 Ark. App. 391, at 7; *Milner v. Luttrell*, 2011 Ark. App. 297, at 3, 384 S.W.3d 1, 3. We are not persuaded that the court abused its discretion. Here, the circuit court carefully considered Bernard's argument and its parsing of grammar and punctuation. The court did not disregard the argument improvidently, thoughtlessly or without due consideration; rather, it did not find Bernard's argument persuasive. We agree with the circuit court. While grammar and punctuation are helpful in contract construction, our supreme court has held that "punctuation is a mere aid to construction, and does not control the construction." *Gray v. Gen. Constr. Co.*, 158 Ark 641, 250 S.W.2d 342, 344 (1923). In *Acceptance Indemnity Insurance Co. v. Southwest Arkansas Electric Cooperative Corp.*, we explained that

> [d]ifferent clauses of [a] . . . contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible; *giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable is error*. A construction that neutralizes any provision of a contract should *never* be adopted if the contract can be construed to give effect to all provisions.

2014 Ark. App. 364, at 4 (emphasis added). Our supreme court has further explained that "[e]very word in [an] agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. *Byme, Inc. v. Ivy*, 367 Ark. 451, 458–59, 241 S.W.3d 229, 236 (2006) (quoting *First Nat'l Bank of Crossett*, 310 Ark. 164, 832 S.W.2d 816 (1992)). In essence, Bernard's contract interpretation reduces the fifty-year

8

term to mere surplus verbiage. We therefore conclude that the circuit court did not abuse its discretion in denying Bernard Court's request for declaratory judgment on this issue.

## B. Discount Department Store

In its second point on appeal, Bernard argues that the circuit court erred in finding that Dirt Cheap is a "discount department store," as that term is used within the language of the type-of-use restriction. Walmart conveyed the property subject to the following type-of-use restriction: the property "will not be used as a grocery store/supermarket or discount department store or wholesale club, such as or similar to Target, Price Club or K-Mart." Primarily citing cases from other jurisdictions, Bernard urges error in the circuit court's decision because Dirt Cheap is not "similar to Target, Price Club, or K-Mart." Walmart disagrees.

Before we address this specific argument on appeal, we find it helpful to remember the procedural posture of this proceeding before the circuit court. Bernard initiated its proceeding by asking the court to determine Walmart's intent in drafting the type-of-use restriction and to declare that the type-of-use restriction was inapplicable to Bernard's lease of the property to Dirt Cheap or a similar retailer. Bernard subsequently sought summary judgment, arguing that the type-of-use restriction did not apply to Dirt Cheap because it "competes in a different market than Walmart and the 'discount department store[s] and wholesale club[s] listed in the Restrictive Covenant." To support its argument, Bernard submitted an affidavit from the chief financial officer of the parent company of Dirt Cheap, outlining its corporate structure and channel-of-distribution model. Walmart responded in opposition, arguing that Dirt Cheap is a discount store because it utilizes the same marketing strategy and the same general merchandise as Target, K-Mart, or Costco. To support its

argument, Walmart submitted an affidavit from its senior property manager explaining Dirt Cheap's operating model and inventory and citing excerpts from Dirt Cheap's website.[4] Walmart argued that by its own admission, Dirt Cheap "offer[s] leading private label and brand name merchandise for as much as 30–90% off regular retail prices" and describes its inventory as including "leading private label and name brand clothing, housewares, and other general merchandise."

Clearly, the parties presented a material issue of fact concerning whether Dirt Cheap is a discount store. As such, the court did not err in denying the motion for summary judgment. *See Harris v. Parrish*, 2018 Ark. App. 348, at 12, 552 S.W.3d 475, 483 (holding that summary judgment was properly denied when a material question of fact remained). Additionally, however, the court was presented with Bernard's request to declare that Dirt Cheap was not a discount department store. The court denied this request for declaratory judgment, and we consider this denial of declaratory judgment under an abuse of discretion standard. *See O'Dell, supra*

Bernard argues that the court erred in denying its requested relief because the specific stores named in the type-of-use restriction—i.e., Target, Price Club, and K-Mart—are all the nation's "retail [or] wholesale giants." Dirt Cheap, on the other hand, is not. Therefore, Bernard contends that because Dirt Cheap is not akin to those stores, it is not a "discount department store" to which the type-of-use restriction applies. We disagree. We conclude

---

[4]Bernard complained at the hearing before the circuit court about Walmart's use of Dirt Cheap's website as exhibits to its affidavit. Bernard argued that these exhibits were not proper for consideration in the summary-judgment context. It has apparently abandoned this argument on appeal, however, as it does not suggest that the circuit court abused its discretion in considering these exhibits.

that nothing in the plain language of the restrictive covenant purports to declare that the named stores are the only stores, or types of stores, to which the restriction applies. The names of these retailers are used as examples, and it does not appear the list was intended to be exhaustive. Indeed, our supreme court has held that the verb "to include," which is arguably similar to the phrase "such as or similar to" as used in the restrictive covenant, "is usually a term of enlargement, and not of limitation . . . [which] conveys the conclusion that there are other items includable, though not specifically enumerated. Thus, a presumption exists that 'include' is nonexclusive: 'The verb *to include* introduces examples, not an exhaustive list.'" *Pritchett v. City of Hot Springs*, 2017 Ark. 95, at 6, 514 S.W.3d 447, 451 (internal citations omitted).

Further, we find no abuse of discretion in the court's finding that Dirt Cheap is a discount department store. In *United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc.*, 413 S.E.2d 866, 868–69 (S.C. Ct. App. 1992), a "discount department store" was defined as

> a large retail establishment where various kinds of goods, wares, and merchandise arranged in departments are sold at reduced prices. *See* [*Webster's New Universal Unabridged Dictionary* (2d ed. 1983)] at 487 (defining the term "department store" to mean "a large retail store not confined to one kind of goods but handling various kinds arranged in departments"); *id*. at 522 (defining the term "discount" to mean "to deduct from; to reduce the quantity, cost, or value of").

*See also Rapids Assocs. v. Shopko Stores, Inc.*, 292 N.W.2d 668, 670 (Wis. Ct. App. 1980) (describing appellee Shopko as a "discount department store" that agreed to lease premises "for the purpose of conducting thereon a retail department store for the sale at discount prices of goods, wares, merchandise and services of various kinds"). We cannot say that the circuit court abused its discretion in finding that Dirt Cheap's operating model fit within

11

this definition and is, therefore, a discount department store to which the type-of-use restriction in the deed applies.

## C. Equitable Servitude

In its final point on appeal, Bernard argues that the type-of-use restriction is unenforceable in both law and equity because it does not "touch and concern" the land, and as such, it does not run with the land. Bernard asserts that the type-of-use restriction does not actually "run with the land" because it does not benefit the land itself but only benefits Walmart "personally."

The circuit court concluded that the type-of-use restriction did not run with the land because it did not "touch and concern" the land. Apparently, the court reached this conclusion on the basis of Bernard's argument that Arkansas recognizes the "minority" rule that a restrictive covenant must "touch and concern" the land in order for it to "run with the land." We have found no Arkansas case law that expressly requires that a restrictive covenant "touch and concern" the land. Rather, our supreme court has held that a covenant is enforceable in law when the covenant is beneficial or essential to the use of the land conveyed and which is expressly made binding upon the heirs, assigns, or successors of the grantor. *See Ark. State Highway Comm'n v. McNeill*, 238 Ark. 244, 266, 381 S.W.2d 425, 437; *Fort Smith Gas Co. v. Gean*, 186 Ark. 573, 55 S.W.2d 63 (1932); *Field v. Morris*, 88 Ark. 148, 114 S.W. 206 (1908). Additionally, a restrictive covenant must be in writing. *See* Ark. Code Ann. § 18-12-103(b) (Repl. 2015).[5] *See also Knowles v. Anderson*, 307 Ark. 393,

---

[5]"An instrument creating a restrictive covenant is not effective to restrict the use or development of real property unless the instrument purporting to restrict the use or development of the real property is executed by the owners of the real property and recorded in the office of the recorder of the county in which the property is located."

395, 821 S.W.2d 466, 467 (1991). Here, the type-of-use restriction is in writing and is expressly made binding upon Walmart as grantor and its affiliated companies or successors. Thus, the only issue for the trial court below was whether the covenant benefited or was essential to the use of the land, not whether it "touched or concerned" the land.[6] Accordingly, we conclude that the circuit court abused its discretion by applying a legal requirement—"touch and concern"—that is not explicitly required in our case law. An abuse of discretion may be manifested by an erroneous interpretation of the law. *Minor v. Barnes*, 2020 Ark. App. 415, at 5; *Wynne-Ark., Inc. v. Richard Baughn Constr.*, 2020 Ark. App. 140, at 10, 597 S.W.3d 114, 120.

We conclude that the court further abused its discretion by enforcing an equitable servitude. Historically, courts have noted that restrictive covenants that do not run with the land still may be enforced as equitable servitudes. *Taormina Theosophical Comm., Inc. v. Silver*, 190 Cal. Rptr. 38, 43 (Cal. Ct. App. 1983) ("Even though a covenant does not run with the land, it may be enforceable in equity against a transferee of the covenantor who takes with knowledge of its terms under circumstances which would make it inequitable to permit him to avoid the restriction."). The general rule is that "even if all technical requirements for a covenant to run with the land are not met, a promise is binding as an equitable servitude if (1) the parties intend the promise to be binding; (2) the promise 'concern[s] the land or

---

[6]We also note that the most current version of the Restatement (Third) of Property has superseded the touch–and–concern doctrine. According to the October 2020 update to the Restatement, "Neither the burden nor the benefit of a covenant is required to touch or concern land in order for the covenant to be valid as a servitude." Restatement (Third) of Property: Servitudes § 3.2.

its use in a direct and not a collateral way;' and (3) 'the subsequent grantee [has] notice of the covenant.'" *Nordbye v. BRCP/GM Ellington*, 266 P.3d 92, 102 (Or. Ct. App. 2011) (citing *Ebbe v. Senior Estates Golf*, 657 P.2d 696 (Or. Ct. App. 1983); 20 Am. Jur. 2d *Covenants*, § 26 (1965)).

Here, the court imposed the equitable servitude because of its finding that Walmart suffered a diminution in the value of its property as a result of the restrictive language in the deed. The court found that Walmart suffered a "decrease [in] property value and the amount of money that was received because of these restrictive covenants, and so that would have been to the detriment, at that time, of Walmart." In our review of the record, however, we are unable to determine the evidence on which the circuit court based this finding. The court took no testimony at the summary-judgment hearing but heard only arguments of counsel. Both parties submitted sworn affidavits to the court in the summary-judgment pleadings, but these affidavits do not address or support the court's factual findings of decreased property value and detriment. Because the record does not support the court's factual findings, we conclude that the court abused its discretion, and we must reverse and remand on this point. *See, e.g., Wood v. Yates-Am. Mach. Co.*, 246 Ark. 662, 664, 439 S.W.2d 307, 308 (1969) (reversing and remanding when there were no facts in the record to sustain the circuit court's findings).

Affirmed in part; reversed and remanded in part.

VIRDEN, GLADWIN, MURPHY, and BROWN, JJ., agree.

HARRISON, J., dissents.

**BRANDON J. HARRISON, Judge, dissenting.** I respectfully dissent from the majority's opinion, though I grant this case presents legal uncertainties for both parties'

positions. The uncertainties are the children of an undeveloped caselaw in Arkansas; the importance (or not) of some cryptic and dated common-law terms and concepts; and how some states and secondary sources have tended to analyze cases like this one in the past and currently. But one must do with what one has. Overall, I am persuaded that the circuit court erred when it declined to enter judgment in favor of the petitioner, Bernard Court, LLC. So I would reverse the court's decision and enter judgment for the petitioner.

## I.

Contrary to the majority's approach, we should begin with the parties' last argument on appeal, which is the majority's point III.C. On this issue, I would hold that Walmart did not establish an equitable servitude under the law and facts of the case because it failed to prove an element that Arkansas law requires: the restriction sought to be enforced against successor Bernard Court must "touch and concern" the land. Historically, an equitable servitude "runs with the land" if four elements are met:

1. a writing;

2. an intent to bind subsequent owners when the servitude was created;

3. the servitude "*touches and concerns*" the land; and

4. notice of the servitude.

As I understand the parties' arguments, the third element is "the thing" of interest here; the parties don't meaningfully disagree over whether elements 1, 2, and 4 have been met.

The circuit court determined that Walmart held an enforceable non-possessory interest against Bernard Court in the deed that Bernard Court took as a successor grantee. I address that ruling and would hold that the restriction in dispute can't be enforced against

15

Bernard Court. If the restriction can't be enforced, then there is no reason to decide whether it expires in fifty or twenty years. Nor would we need to decide whether Dirt Cheap is or is not like a Target, Costco, or some other "discount department store" such that Dirt Cheap is brought within the restriction's ambit. The distinctions those two questions raise have no practical legal importance if they cannot be enforced.

But how does one determine whether Walmart's restriction is enforceable as an equitable servitude? The majority says all we need to do is look at the original parties' intent. According to my reading of the law, however, to answer this question, we must ask whether the restriction is a personal promise or one that "runs with the land," to use the old common-law phrase. Generally, a promissory restriction is not enforceable against a *successor in interest* (Bernard Court, LLC) unless the restriction runs with the land; and to run with the land at common law, the promissory restriction must "touch and concern the land." (Note how one vague phrase turns into an equally vague phrase.)

Again, the main question here is whether Arkansas is a so-called "touch and concern" state. The parties disagree on the answer. The majority and I part ways, too, on the answer to this important question. Bernard Court argues that the restriction must touch and concern the land but fails to do so; therefore, it's unenforceable. Walmart says that such an element doesn't exist under Arkansas property law; therefore, there is no reason why the deed's terms cannot be fully enforced against successor Bernard Court. The majority has taken Walmart's view on this issue. I side with Bernard Court, believing that Arkansas is currently a touch-and-concern state, though the underdeveloped caselaw admittedly expresses this old common-law concept in a different way.

Arkansas cases have asked whether the restriction is "beneficial or essential to the use" of land. One example is *Arkansas State Highway Commission v. McNeill*, 238 Ark. 244, 266, 381 S.W.2d 425, 437 (1964), in which the Arkansas Supreme Court wrote (with my emphasis):

> [I]n Arkansas the rule is that a covenant which is *beneficial or essential to the use of the land* conveyed *and* which is expressly made binding upon the heirs, assigns or successors of the grantor, runs with the land.

The majority points out that Arkansas caselaw does not expressly use the phrase "touch and concern." I agree. Nonetheless, I equate the phrase "touch and concern the land," a term that has been commonplace in the history of property law, with the phrase "beneficial or essential to the use of land" for this case's purposes. In other words, they are legal similes that reflect the same principle. The different phrases are not, I don't think, expressions of two different and separate legal questions.

To support its view that the two phrases express separate and different legal concepts, the majority opinion cites cases from California and Oregon. According to the majority's reading of some West Coast and Pacific Northwest cases, a restriction (servitude) runs with the land if the party seeking to enforce it shows that the parties intended that the burden associated with the restriction was intended to affect the successor in interest. In other words, only the second element that I listed above (an intent to bind subsequent owners) matters. I respectfully disagree.

This brings me to an issue the majority has chosen not to address, which is the "anticompetition" angle and why it matters to the enforcement question. Walmart stated in the affidavit that it filed in opposition to Bernard Court's petition that the restriction at

issue is intended to squelch competition. Walmart candidly admits in its affidavit that it regularly includes fifty-year restrictions in its real-estate contracts "to address a potential situation in which a Walmart competitor would open a location in close proximity to a Walmart store." The admission that the conveyance—recall the restrictions in play here were originally included in a deed between Walmart and Belz Burrow II—was made with an anticompetition intent goes some distance to establish that the restriction does not touch and concern the land under current Arkansas law. The result is that this restriction is a personal promise that binds only the original promisor (Belz Burrow II) from leasing the property to a competing business.

The troublesome case for Walmart's position is *Savings, Inc. v. Blytheville*, 240 Ark. 558, 401 S.W.2d 26 (1966). The takeaway from that case seems to be that an anticompetition restriction between A and B is a personal promise; therefore, it did not run with the land and bind C, who was B's successor in interest. In *Savings*, the Arkansas Supreme Court quoted Justice Oliver Wendell Holmes, Jr., for the proposition that the anticompetition restriction at issue in the case did not affect the use or occupation of the land—it "simply tend[ed] indirectly to increase its value, by excluding a competitor from the market[.]" *Id*. at 563, 401 S.W.2d at 29. The court's reliance on the Justice Holmes quote, which came from *Norcross v. James*, 2 N.E. 946, 948 (Mass. 1885), overruled by *Whitinsville Plaza, Inc. v. Kotseas*, 390 N.E.2d 243 (Mass. 1979), is telling. And what it says is that Arkansas has a touch-and-concern requirement that must be met when the enforcement of an equitable servitude or real covenant is at issue. Furthermore, under the

18

traditional touch-and-concern requirement, a restriction must confer a physical, not a business or financial, benefit upon the land before the restriction binds a successor.

It's true that courts across the country have for decades been moving away from the traditional touch-and-concern analysis. (This case helps illustrate why that is so.) An influential treatise has likewise attempted to "modernize" the law. To that end, the Restatement (Third) of Property has eliminated completely the requirement that a restriction touch and concern the land. Generally, under the Restatement Third, parties can now enforce any servitude with notice if it is not illegal; does not violate the constitution; or does not violate public policy such as an *unreasonable* restraint on trade or competition would. States that have embraced the Restatement Third's view (often over dissents and concurrences) had to overrule old common-law cases and impose a new "reasonableness" rule.

*Savings* reflects the traditional view, one which The Restatement (First) of Property then supported. "Thus a promise that land of the promisor will not be so used as to compete with a business carried on upon the land of the promisee does not so affect the land of the promisor that it can be made to run with it." Restatement (First) of Property § 537 (1944). Anticompetition restrictions were held to adversely affect the original grantor's financial or business concerns, *but not the land itself.* Because such covenants did not touch and concern the land, they did not bind successors. It apparently did not matter that the original parties may have intended that no one would operate a competing business on the specified land by using the phrase "runs with the land."

19

I'm not alone in reading *Savings* as espousing the proposition that anticompetition restrictions do not touch and concern the land and are therefore unenforceable against successor grantees. Some state and federal courts have also interpreted that case to hold that an anticompetition covenant increases the value of land only indirectly and therefore does not "touch and concern" it.[1] Moreover, law-review commentators have for years cited *Savings* as embodying the traditional (now minority) view that anticompetition restrictions do not touch and concern the land.[2] Even Massachusetts, from whence sprang the Justice Holmes quote in *Savings, Inc.*, moved away from the traditional rule decades ago. *See Whitinsville Plaza, Inc. v. Kotseas*, 390 N.E.2d 243 (Mass. 1979). But Arkansas has not done so.

If the Arkansas Supreme Court chooses to review this appeal (or some future one) and "modernize" one facet of our property law by, for example, moving from the First Restatement's position to the Third Restatement's position and thereby adopt a "reasonableness" standard (or some other test) in lieu of the traditional "touch and concern/essential to the use or value of land" standard when reviewing the enforceability of anticompetition land restrictions, then it may do so. But this court may not.

---

[1]*See, e.g.*, *Barton v. Fred Netterville Lumber Co.*, 317 F. Supp. 2d 700, 706 (S.D. Miss. 2004); *Davidson Bros. v. D. Katz & Sons, Inc.*, 579 A.2d 288, 289 (N.J. 1990).

[2]*See, e.g.*, James L. Winokur, *Ancient Strands Rewoven, or Fashioned Out of Whole Cloth?: First Impressions of the Emerging Restatement of Servitudes*, 27 Conn. L. Rev. 131, 137 (1994); Paula A. Franzese, *"Out of Touch:" the Diminished Viability of the Touch and Concern Requirement in the Law of Servitudes*, 21 Seton Hall L. Rev. 235, 240 (1991); James L. Winokur, *The Mixed Blessings of Promissory Servitudes: Toward Optimizing Economic Utility, Individual Liberty, and Personal Identity*, 1989 Wis. L. Rev. 1, 85 (1989).

II.

Finally, two procedural observations that warrant mentioning given the parties' briefs and the majority opinion: the standard of review and the disposition.

Cases that have had the Declaratory Judgment Act at their core are irreconcilable on what standard of review should be applied and under what circumstances one standard should be used but not another. The parties spent much time on this issue in their respective appellate briefs and could not agree. The majority wisely does not attempt to reconcile the irreconcilable. My independent research has fared no better. To put it bluntly, the law is a mess in this area. That said, I believe this case calls for the standard related to bench trials. Consequently, any fact-based finding can't be clearly erroneous (clearly against the preponderance of the evidence); and a de novo standard applies to any law-based ruling. The summary-judgment standard and the abuse-of-discretion standard seem inconsistent with the purpose and letter of the Declaratory Judgment Act insofar as it was pleaded and applied in this case. For example, neither Bernard Court nor Walmart demanded a jury trial, though either one could have done so.[3] Further, as far as I can tell, neither party sought

---

[3]Ark. Code Ann. § 16-111-109 (Repl. 2016), titled "Jury Trial," states that an issue of fact in a declaratory-judgment action may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions. *See also* Ark. Code Ann. § 16-111-102 (An interested party may receive a final declaration of concerning "any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations."). No party has argued that a declaratory judgment was the incorrect procedural mechanism to decide this controversy. *See* Ark. Code Ann. § 16-111-106 ("The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.").

to continue the scheduled hearing on Bernard Court's petition so the factual record could be further developed before the court decided the petition. Finally, I see no reason for a remand. The parties asked for a declaration of rights and received one; except I would provide a different answer and end the case. *See Thompson v. Fischer*, 364 Ark. 380, 382, 220 S.W.3d 622, 624 (2005) ("The appellate court may always enter such judgment as the circuit court should have entered[.]") (internal citation omitted).

### III.

No matter the standard of review that could apply to this case, I would hold that Bernard Court, LLC, is entitled to have its petition granted and receive a judgment stating that Walmart cannot enforce the restriction at issue against Bernard Court, LLC. Consequently, I would reverse the circuit court's decision and enter judgment for the petitioner rather than remand the case to the circuit court.

*Waddell, Cole & Jones, PLLC*, by: *Ralph W. Waddell*, *Kevin W. Cole*, and *Samuel T. Waddell*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Karen P. Freeman*, *Nathan A. Read*, and *Devin R. Bates*, for appellee.